******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ROBERT E. HEALEY *v.* THE HAYMOND LAW
FIRM, P.C., ET AL.
(AC 38599)

Prescott, Mullins and Bear, Js.

*Argued January 31—officially released June 27, 2017*

(Appeal from Superior Court, judicial district of
Hartford, Elgo, J.)

*Leon M. Rosenblatt* and *Richard J. Padykula*, for the
appellant (named defendant).

*Andrew L. Houlding*, for the appellee (plaintiff).

*Opinion*

MULLINS, J. The defendant, The Haymond Law Firm, P.C.,[1] appeals from the judgment of the trial court, rendered after a jury trial, awarding its former employee, the plaintiff, Robert E. Healey, damages for unpaid wages pursuant to General Statutes § 31-72.[2] On appeal, the defendant claims that the court erred by charging the jury on the amended version of § 31-72 because the amendment took effect after this action had commenced. Therefore, the defendant argues, the court was required to charge the jury on the repealed version of that statute that had been in effect at the time the alleged injuries occurred. The defendant also claims that the court's instruction on the amended version of the statute was a clear, obvious, and indisputable error that warrants reversal under the plain error doctrine.[3]

We conclude that the defendant's claim is unreviewable because it induced the alleged instructional impropriety by affirmatively requesting that the court charge the jury on the amended version of § 31-72. We also conclude that plain error reversal is not warranted in this case. Accordingly, we affirm the judgment of the trial court.

The following facts, which are not in dispute for the purposes of this appeal, and procedural history are relevant to the defendant's claim. The plaintiff worked for the defendant as a medical malpractice attorney for more than seventeen years. In 2011, the plaintiff informed John I. Haymond, the defendant's principal, that he wished to retire from practicing law full time. Consequently, the defendant and the plaintiff agreed that the plaintiff would continue to work for the defendant through 2012 on a part-time basis.

In September, 2012, the defendant and the plaintiff reached another agreement that further reduced the plaintiff's workload and modified the plaintiff's compensation. In particular, the agreement provided that (1) the plaintiff would retain responsibility only for a small number of medical malpractice cases; (2) the defendant would pay the plaintiff 50 percent of the legal fees recovered in those cases; and (3) the defendant would pay the plaintiff 15 percent of any referral fees that the defendant received in cases that the plaintiff had referred to the law firm of Koskoff, Koskoff & Bieder, P.C. (Koskoff, Koskoff & Bieder).

In March, 2013, the plaintiff settled two medical malpractice cases for which he had retained responsibility pursuant to the September, 2012 agreement. Subsequently, the plaintiff requested that the defendant pay him 50 percent of the legal fees it received in those settlements. The defendant refused to pay the plaintiff 50 percent of the recovered legal fees and, instead, paid him only approximately 15 percent of the fees.

Around August, 2014, the plaintiff learned that one

of the cases that he had referred to Koskoff, Koskoff & Bieder had been settled and that the defendant received a referral fee from Koskoff, Koskoff & Bieder for that case. The defendant never tendered any part of that referral fee to the plaintiff.

Thereafter, the plaintiff brought the present action, seeking recovery of (1) his full 50 percent share of the legal fees recovered in the two medical malpractice cases that he had settled, and (2) 15 percent of the referral fee that the defendant received from the case settled by Koskoff, Koskoff & Bieder. Specifically, the plaintiff's complaint sought recovery principally[4] on the basis of a statutory claim for unpaid wages made pursuant to § 31-72 and a breach of contract claim.

Regarding the statutory claim for unpaid wages, the governing statute, § 31-72, was amended while this action was pending. On June 19, 2013, when this action was initiated, the version of the statute that was in effect at that time provided in relevant part: "When any employer [unlawfully] fails to pay an employee wages . . . such employee . . . *may* recover, in a civil action, *twice the full amount* of such wages . . . ." (Emphasis added.) General Statutes (Rev. to 2013) § 31-72. Our Supreme Court also had provided the following interpretive gloss relating to double damages under that version of § 31-72: "The statute provides for a *discretionary* award of double damages . . . to employees who are successful in actions against their employers for wages due. . . . Although § 31-72 does not set forth a standard by which to determine whether double damages should be awarded in particular cases, it is well established . . . that it is appropriate for a plaintiff to recover . . . double damages . . . *only when the trial court has found that the defendant acted with bad faith, arbitrariness or unreasonableness.*" (Citation omitted; emphasis added; internal quotation marks omitted.) *Ravetto* v. *Triton Thalassic Technologies, Inc.*, 285 Conn. 716, 724, 941 A.2d 309 (2008). Also, in cases in which a discretionary award of double damages was sought under that version of § 31-72, the burden of proving an employer's bad faith, arbitrariness, or unreasonableness was on the plaintiff. See *Somers* v. *LeVasseur*, 230 Conn. 560, 568, 645 A.2d 993 (1994) ("the traditional principle [is] that in a civil case [t]he general burden of proof rests upon the plaintiff" [internal quotation marks omitted]).

In June, 2015, approximately two years after this action was commenced and four months before trial began, § 31-72 was amended by No. 15-86, § 2, of the 2015 Public Acts. The amended version took effect on October 1, 2015, several weeks before trial began. It provides in relevant part: "When any employer [unlawfully] fails to pay an employee wages . . . such employee . . . *shall* recover, in a civil action, (1) twice the full amount of such wages . . . . *or* (2) if the

*employer establishes* that the employer had a *good faith belief* that the underpayment of wages was in compliance with law, the full amount of such wages . . . with costs and such reasonable attorney's fees as may be allowed by the court. . . ." (Emphasis added.) General Statutes § 31-72.

On October 20, 2015, the plaintiff submitted a preliminary request to charge, proposing that the court instruct the jury using the language in the amended version of § 31-72. After quoting the relevant part of the amended version of § 31-72 in his proposed instructions, the plaintiff requested the following specific instructions: (1) "If you do find in favor of the plaintiff—that is, that the defendant unlawfully withheld his pay—you must then determine whether the [defendant] had a 'good faith belief that the underpayment of wages was in compliance with law.' It is the *defendant's burden* to prove to you that the defendant had such a good faith belief"; and (2) "If you find that *the defendant failed to prove that it had such a good faith belief*, then you *must* award the plaintiff twice the amount of unpaid wages . . . [and the plaintiff] is *entitled* to collect his attorney's fees." (Emphasis added.)

On October 26, 2015, the plaintiff filed a memorandum of law supplementing his preliminary request to charge. In that memorandum, the plaintiff argued that the court should conclude that the amended version of § 31-72 applied retroactively and, therefore, use that version in its instructions. The defendant did not file any response to the plaintiff's preliminary request to charge and accompanying memorandum of law.

On October 27, 2015, the defendant filed its own preliminary request to charge, which also quoted the *amended* version of § 31-72. In particular, the defendant asked the court to give the following instruction: "I will summarize the law for you. . . . [Section] 31-72 provides criteria for an employee to collect unpaid wages. Section 31-72 states, in pertinent part [that] . . . [w]hen any employer [unlawfully] fails to pay an employee wages . . . such employee . . . *shall* recover, in a civil action, (1) twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court, or (2) *if the employer establishes that the employer had a good faith belief that the underpayment of wages was in compliance with law, the full amount of such wages or compensation, with costs and such reasonable attorney's fees as may be allowed by the court.*" (Emphasis altered; internal quotation marks omitted.)

On October 28, 2015, the second day of evidence, the plaintiff filed two additional requests. The first was a request for jury interrogatories. That request proposed interrogatories tracking the language of the amended version of § 31-72, including an interrogatory asking the jury if it "[found] that *the defendant failed to prove* that

it acted in good faith in failing to pay the plaintiff in full the compensation he had earned." (Emphasis added.) Although the defendant did not file a written objection to the proposed interrogatories, the defendant's counsel subsequently made the following oral objection to the aforementioned interrogatory: "[It is] unjustifiably prejudicial. I would suggest that it say, Do you find that the defendant had a good faith belief that it paid wages in compliance with the law, yes or no?" The second request, filed by the plaintiff on October 28, 2015, was a revised request to charge. That request, like the plaintiff's preliminary request to charge, proposed that the court instruct the jury according to the amended version of § 31-72. The defendant did not file a written objection to the revised request to charge.

Also on October 28, 2015, the court heard argument from the parties regarding the proposed jury instructions. The plaintiff's counsel began argument by stating: "[T]he defendant has agreed that the latest version of the § 31-72 statute, as amended effective October 1, 2015, is the statute that is in effect now and we don't have to be concerned about the question of retroactivity." It appears that the plaintiff's counsel concluded that the defendant had "agreed" that the amended version controlled because the defendant had quoted verbatim that version of the statute in its own request to charge. Thus, relying on the amended statute, the plaintiff's counsel requested the court to instruct the jury "that it's the *employer's burden* to prove that it acted in good faith in failing to pay wages . . . ." (Emphasis added.)

The defendant's counsel did not object to that requested instruction. Rather, in responding to the argument by the plaintiff's counsel, the defendant's counsel stated that "[t]he plaintiff's attorney is correct that . . . the statute has been amended going forward. What [the plaintiff's counsel] has not done . . . though, is articulate that the court still maintains the discretion, under the new wording of the [amended] statute, whether or not to allow attorney's fees if there is a . . . good faith belief that wages were paid." That is, the defendant's counsel apparently was contending that the amended version is ambiguous as to whether an award of attorney's fees for an employer's withholding of wages is mandatory or discretionary. In so arguing, the defendant was challenging the plaintiff's assertion that the amended version *requires* an award of attorney's fees where an employer unlawfully fails to pay an employee wages, *not* his assertion that the amended version applied retroactively and that the employer now was required to prove good faith.

Moreover, later in that hearing, the following exchange occurred between the defendant's counsel and the court regarding the interpretation of the amended version of § 31-72:

"The Court: The burden of [proving] good faith, right. That is the defendant's burden. Are we clear about that?"

"[The Defendant's Counsel]: *We are clear about that.*

"The Court: Okay.

"[The Defendant's Counsel]: The language, *I will concede . . . is very clear with respect . . . to that.*" (Emphasis added.)

After the conclusion of evidence on October 28, 2015, the court reviewed the substance of its anticipated charge with counsel. In particular, the court asked the defendant's counsel the following question: "[W]ith respect to the wages, I am going to charge what's in the statute. Is there any objection to that?" The defendant's counsel replied, "No."

On October 29, 2015, the court charged the jury. The charge contained the following relevant provisions. First, the court recited the amended version of § 31-72. Second, the court instructed that "[i]f you do find in favor of the plaintiff [with respect to the claim made under § 31-72], that is, that the defendant unlawfully withheld his pay, you must then determine whether the [defendant] had a good faith belief that the under-payment of wages was in compliance with law. Please be clear that with respect to this element and this element alone, *the burden shifts to the defendant to prove to you that the defendant had such a good faith belief.* . . . If you find that the defendant had such a good faith belief, then the defendant is liable to the plaintiff only for the full amount of the unpaid wages. If you find that *the defendant failed to prove that it had such a good faith belief*, then you *must* award plaintiff twice the amount of unpaid wages. In addition, if the plaintiff prevails on this count, then he is entitled to collect his attorney's fees, although you will not make any determination with respect to attorney's fees. The amount of attorney's fees shall be determined by the court." (Emphasis added.)

When the court asked if counsel had any exceptions to the charge, the defendant's counsel replied: "With respect to the request to charge, we would reclaim our objection to the charge that the General Assembly intended that attorney's fees are automatically recoverable under § 31-72 if a jury finds that a claim for unpaid wages has been sustained. Also, we would object to the inclusion in the charge of General Statutes § 31-71f[5] to the specific claims in this case because the authority has applied that subsection of the law in cases that are significantly different than claimed here." (Footnote added.) The defendant did not raise any other objections to the charge.

At no point during the trial court proceedings did the defendant ever argue that the court should instruct on

the repealed version of § 31-72, which placed the burden of proving bad faith on the employee, rather than that statute's amended version. Furthermore, the defendant conceded that the amended version of § 31-72 places the burden of proving good faith on the employer.

The jury returned a verdict for the plaintiff on all five counts asserted in his complaint and awarded him $262,930 in damages. In addition, the court awarded the plaintiff $114,742 in attorney's fees and interest, resulting in a total judgment for the plaintiff in the amount of $377,672. This appeal followed.

On appeal, the defendant claims that the trial court's jury instructions were improper because they retroactively applied the amended version of § 31-72 that was enacted after this action was commenced. Specifically, the defendant argues that the court improperly instructed the jury that, pursuant to the amended version of § 31-72, it *must* award the plaintiff double damages for unlawfully withheld wages *unless the defendant* establishes that it withheld the wages in good faith. According to the defendant, the court should have instructed the jury on the repealed version of § 31-72, pursuant to which the plaintiff *may* recover double damages *if he* proves that the defendant withheld the wages in bad faith. The plaintiff responds that the defendant failed to preserve this claim for appeal and also that it "induced by [its] own actions the alleged instructional defect that it now challenges." (Internal quotation marks omitted.) We agree with the plaintiff that the defendant induced the alleged instructional impropriety and, thus, decline to review the defendant's claim.

We begin with the relevant legal principles. "This court routinely has held that it will not afford review of *claims*[6] of error when they have been induced. [T]he term induced error, or invited error, has been defined as [a]n error that a party cannot complain of on appeal because the party, through conduct, encouraged or prompted the trial court to make the erroneous ruling. . . . It is well established that a party who induces an error cannot be heard to later complain about that error. . . . This principle bars appellate review of induced nonconstitutional and induced constitutional error. . . . The invited error doctrine rests on principles of fairness, both to the trial court and to the opposing party." (Emphasis added; footnote omitted; internal quotation marks omitted.) *Gorelick* v. *Montanaro*, 119 Conn. App. 785, 796–97, 990 A.2d 371 (2010). "The rationale for declining to review jury instruction claims when the instructional error was induced . . . [is that] . . . allow[ing] [a] defendant to seek reversal [after] . . . his trial strategy has failed would amount to allowing him to . . . ambush the [opposing party and the trial court] with that claim on appeal." (Internal quotation marks omitted.) *State* v. *Kitchens*, 299 Conn. 447, 470, 10 A.3d 942 (2011).

"[Our appellate courts] ha[ve] found [claims of] induced error undeserving of appellate review in the context of a jury instruction claim when the [appealing party] has affirmatively requested the challenged jury instruction . . . ." (Internal quotation marks omitted.) *State* v. *Lindsay*, 143 Conn. App. 160, 183, 66 A.3d 944, cert. denied, 310 Conn. 910, 76 A.3d 626 (2013). See, e.g., *State* v. *Cruz*, 269 Conn. 97, 106–107, 848 A.2d 445 (2004) (declining to review claim of induced error where "challenged jury instruction repeated the exact language that the defendant had requested" [emphasis omitted]); *Suarez* v. *Dickmont Plastics Corp.*, 242 Conn. 255, 265–67, 698 A.2d 838 (1997) ("[because] the trial court instruct[ed] on both standards in accordance with the defendant's own request to charge submitted to the trial court . . . [t]he defendant cannot now complain when the trial court's jury instructions were based largely on [its] own proposed draft jury instructions").

Our review of the record reveals that the defendant induced the alleged instructional impropriety by affirmatively requesting the language it now challenges. The defendant filed a written request to charge that cited and quoted the *amended* version of § 31-72. In particular, the request quoted the provision of the amended version that imposes liability for double damages on an employer who fails to prove that it withheld wages in good faith. Specifically, the defendant requested the following instruction: "When any employer [unlawfully] fails to pay an employee wages . . . such employee . . . *shall* recover, in a civil action, (1) *twice the full amount of such wages* . . . *or* (2) *if the employer establishes that the employer had a good faith belief* that the underpayment of wages was [lawful], the full amount of such wages or compensation . . . ." (Emphasis altered; internal quotation marks omitted.)

In accordance with the defendant's written request, the court instructed the jury on the amended version of § 31-72. It charged the jury, in relevant part: "If you find that the *defendant failed to prove* that it had . . . a good faith belief [in withholding the plaintiff's wages], then you *must* award the plaintiff twice the amount of unpaid wages." (Emphasis added.) Thus, the defendant received an instruction consistent with the language that it had requested. Accordingly, we decline to review the defendant's claim of instructional impropriety because the defendant induced the alleged error of which it now complains.

The defendant also seeks reversal pursuant to the plain error doctrine. Specifically, it argues that the trial court's alleged error in determining that the amended version of § 31-72 applied retroactively was plain error. The plaintiff responds that "[p]lain error review is not appropriate in this case" because the defendant induced the error of which it now complains. He further argues that if we reach the merits of the defendant's plain error

claim, the trial court did not err in retroactively applying the amended version of § 31-72. In particular, the plaintiff argues that although there is no authority addressing whether the amended version of § 31-72 applies retroactively, retroactive application is consistent with the general legal principles governing the retroactive applicability of statutes. We conclude that, to the extent that the plain error doctrine applies to claims of induced error, the defendant's alleged instructional impropriety does not rise to the level of plain error because it has failed to demonstrate that such error resulted in manifest injustice.

We first review the relevant legal principles governing the plain error doctrine. Notwithstanding the apparent uncertainty[7] regarding whether this court can evaluate claims of induced error under the plain error doctrine, this court recently considered whether a claim of induced instructional error constituted reversible plain error. See *State* v. *Schuler*, 157 Conn. App. 757, 774, 776, 118 A.3d 91 ("[o]ur review of the record leads us to the conclusion that the claimed error in the jury instruction, [which the defendant conceded was induced] although potentially ambiguous in its meaning, fails to rise to the level of plain error"), cert. denied, 318 Conn. 903, 122 A.3d 633 (2015); cf. *State* v. *McClain*, 324 Conn. 802, 808, 155 A.3d 209 (2017) ("[w]e . . . conclude that a *Kitchens* waiver [whereby a criminal defendant implicitly waives a claim of instructional error] does not preclude appellate relief under the plain error doctrine"). Accordingly, we address the defendant's claim of plain error.

The following principles guide our application of the plain error doctrine to the defendant's claim. "[T]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . In addition, the plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . .

"[Our Supreme Court] recently clarified the [two-pronged] framework under which we review claims of plain error. [Under the] [f]irst [prong], we must determine whether the trial court in fact committed an error and, if it did, whether that error was indeed plain in the sense that it is patent [or] readily discernable on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable. . . . [T]his inquiry entails a relatively high standard, under which it is not enough for the defendant simply to demonstrate that his position is correct. Rather, the party seeking

plain error review must demonstrate that the claimed impropriety was so clear, obvious and indisputable as to warrant the extraordinary remedy of reversal." (Internal quotation marks omitted.) *State* v. *Darryl W.*, 303 Conn. 353, 371–73, 33 A.3d 239 (2012).

"[U]nder the second prong of the analysis we must determine whether the consequences of the error are so grievous as to be fundamentally unfair or manifestly unjust. . . . Only if *both prongs* of the analysis are satisfied can the appealing party obtain relief." (Emphasis added; internal quotation marks omitted.) *In re Jah'za G.*, 141 Conn. App. 15, 22, 60 A.3d 392, cert. denied, 308 Conn. 926, 64 A.3d 329 (2013).

After reviewing the record, we reject the defendant's request to reverse the trial court's judgment pursuant to the plain error doctrine. Even if we assume, without deciding, that the court's retroactive application of the amended statute was an error satisfying the first prong of the plain error doctrine, we conclude that such error fails to satisfy the second plain error prong because it did not result in manifest injustice. See, e.g., *State* v. *Sanchez*, 308 Conn. 64, 84, 60 A.3d 271 (2013) ("assuming that it is not debatable that [trial court improperly failed to give a *Ledbetter* instruction] . . . the omitted jury instruction did not result in manifest injustice"); *98 Lords Highway, LLC* v. *One Hundred Lords Highway, LLC*, 138 Conn. App. 776, 804, 54 A.3d 232 (2012) ("assum[ing] that the [court's] failure to require [the counterclaim plaintiffs to amend their pleadings] was an error in satisfaction of the first prong of the plain error test, we would be unable to conclude that the results of such a claimed error rose to the level of fundamental unfairness in satisfaction of the second prong of the test"); *State* v. *Edwin M.*, 124 Conn. App. 707, 716, 6 A.3d 124 (2010) ("[e]ven if we assume, without deciding, that it was improper for the trial court to allow . . . an expert opinion in the area of sexual abuse, we do not believe that [t]his testimony . . . work[ed] a serious and manifest injustice on the [defendant]" [citation omitted; internal quotation marks omitted]), cert. denied, 299 Conn. 922, 11 A.3d 151 (2011).

Turning then to the second prong, in "address[ing] . . . claim[s] of plain error despite a finding of waiver or induced error . . . [our Supreme Court] has relied in part on the defendant's action as a basis for concluding that the defendant had not demonstrated the manifest injustice or prejudice required to prevail under the plain error doctrine." *State* v. *Darryl W.*, supra, 303 Conn. 372 n.17; see also *State* v. *Alston*, 272 Conn. 432, 456, 862 A.2d 817 (2005) ("we conclude that the defendant is not entitled to a new trial because he induced the trial court to take the very actions he now criticizes as erroneous, and he has failed to demonstrate any prejudice resulting therefrom").

Indeed, in a case in which we applied the plain error

doctrine to a claim of induced error, this court recently opined: "Regardless of whether the [alleged impropriety satisfies the first plain error prong], no manifest injustice results from our refusal to entertain an argument fashioned anew for appellate purposes, particularly where the freshly minted argument contradicts the position that the plaintiff advanced in the trial court." *Gladstein* v. *Goldfield*, supra, 163 Conn. App. 586–87.

As previously set forth in considerable detail, the alleged instructional error was induced by the defendant's submission of a request to charge that quoted and relied on the amended version of § 31-72. Furthermore, the record reveals that on several occasions throughout the trial, the defendant acquiesced to the court instructing the jury on the amended version. In light of the extent to which the defendant's own actions contributed to the claimed error, we conclude that it has failed to demonstrate that the consequences of the claimed error were manifestly unjust.

Accordingly, we decline to afford the defendant relief under the plain error doctrine.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] John I. Haymond also was named as a defendant in this action but the plaintiff withdrew the claims against Haymond in his individual capacity prior to trial. Accordingly, we refer to The Haymond Law Firm, P.C., as the defendant throughout this opinion.

[2] The plaintiff also sought recovery on four other claims alleging breach of contract, invasion of privacy, money withheld and interest pursuant to General Statutes § 37-3a, and violations of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. The jury found for the plaintiff on all of those claims, and the defendant has not challenged the judgment with respect to those claims in this appeal. The defendant's failure to challenge the judgment with respect to those claims does not implicate mootness because those claims are not independent bases supporting the jury's award of double damages.

[3] We note that the defendant's invocation of the plain error doctrine occurs only in a footnote in its brief. We previously have indicated that this is not the preferred method by which a party should present claims to this court. See, e.g., *State* v. *Reddick*, 15 Conn. App. 342, 343, 545 A.2d 1109 ("we refuse to review any claim or any alternative claim to a properly briefed claim which has been presented and argued by way of footnotes"), cert. denied, 209 Conn. 819, 551 A.2d 758 (1988). Nevertheless, we choose to address the defendant's plain error argument in this case. See *State* v. *Salz*, 26 Conn. App. 448, 457 n.4, 602 A.2d 594 (1992) ("we [examine] this claim even though the defendant requested . . . plain error review in a footnote"), aff'd, 226 Conn. 20, 627 A.2d 862 (1993).

[4] See footnote 2 of this opinion.

[5] The plaintiff's request to charge asked that the court instruct the jury that "[i]n making [its] determination of whether all wages were paid to the plaintiff, [it] . . . take into account the provisions of [§] 31-71f."

General Statutes § 31-71f requires an employer to "(1) [a]dvise [its] employees in writing, at the time of hiring, of the rate of remuneration, hours of employment and wage payment schedules, and (2) make available to [its] employees, either in writing or through a posted notice maintained in a place accessible to [its] employees, any employment practices and policies or change therein with regard to wages, vacation pay, sick leave, health and welfare benefits and comparable matters." An employer's failure to comply with the requirements of § 31-71f is actionable under § 31-72. See General Statutes § 31-72 ("[w]hen any employer fails to pay an employee wages in accordance with the provisions of sections 31-71a to 31-71i, inclusive . . . such employee . . . shall recover, in a civil action, (1) twice the full amount of such wages, with costs and such reasonable attorney's fees as may be

allowed by the court, or (2) if the employer establishes that the employer had a good faith belief that the underpayment of wages was in compliance with law, the full amount of such wages or compensation, with costs and such reasonable attorney's fees as may be allowed by the court").

[6] The term "induced error" apparently has become shorthand for the doctrine pursuant to which we decline to review a party's *claim* of error if the party "induced the action of the [trial] court from which she now complains." *Gladstein* v. *Goldfield*, 163 Conn. App. 579, 585, 137 A.3d 60, appeal dismissed, 325 Conn. 418,      A.3d      (2017). It may be misleading, however, to refer to this doctrine simply as "induced error." Failing to use the qualifiers *claimed* or *alleged* to describe the error might give the impression that this court is determining that the *claimed* error is *in fact* error. Given that the doctrine implicates only a *claim's reviewability*, our jurisprudence is clear that the doctrine does not require us to address the merits of the claim. See, e.g., id., 585 n.3 ("Because we conclude that the plaintiff's claim is not reviewable, we need not determine whether the court's interpretation of the term 'mistake' in [General Statutes] § 52-109 was proper. We leave consideration of that issue to the day when such claim properly may come before us."). Thus, in applying the doctrine in this case, we do not mean to suggest that the *claimed* or *alleged* error *actually* is error. Id.

[7] Our Supreme Court has "recognize[d] that there appears to be some tension in our appellate case law as to whether reversal on the basis of plain error could be available in cases where the alleged error is causally connected to the defendant's own behavior. In [some cases, the Supreme Court] held that where the defendant, personally and through counsel, had expressly waived his right to trial, reversal for plain error was not appropriate because if there has been a valid waiver, there is no error for [the reviewing court] to correct. . . . In other cases, [it] has addressed a claim of plain error despite a finding of waiver or induced error, but nonetheless has relied in part on the defendant's action as a basis for concluding that the defendant had not demonstrated the manifest injustice or prejudice required to prevail under the plain error doctrine." (Citations omitted; internal quotation marks omitted.) *State* v. *Darryl W.*, 303 Conn. 353, 371–72 n.17, 33 A.3d 239 (2012); see also *State* v. *Coward*, 292 Conn. 296, 305–13, 972 A.2d 691 (2009) (applying plain error doctrine to instructional impropriety that defendant conceded was induced by his own conduct); *State* v. *Maskiell*, 100 Conn. App. 507, 520, 918 A.2d 293 ("[t]his court has evaluated under the plain error doctrine claims of error that pertained to induced error . . . and has explicitly rejected the . . . contention [that the plain error doctrine is inapplicable to claims of induced error]" [citations omitted]), cert. denied, 282 Conn. 922, 925 A.2d 1104 (2007).