******************************************************

    The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

    All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

    The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DEREK J. DELEO *v.* EQUALE AND
CIRONE, LLP, ET AL.
(AC 38527)

Lavine, Prescott and Bright, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendants for, inter alia,
breach of fiduciary duty and conversion. The plaintiff, a certified public
accountant, was a partner at the defendant accounting firm, where the
defendant C was managing partner. In April 2013, C decided to terminate
his partnership with the plaintiff after it became known that the plaintiff
had engaged in a relationship with a staff accountant. The plaintiff
retained his 38 percent partnership interest through June 30, 2018, and,
after his departure, continued to provide accounting services in New
Milford. The plaintiff thereafter brought the present action, alleging,
inter alia, that he still held a 38 percent interest in the partnership, that
C had excluded him from the daily operations of the partnership, and
that C's conduct frustrated the economic purpose of the partnership
such that it was no longer reasonable to continue the partnership's
business in accordance with the partnership agreement. The plaintiff
sought, inter alia, a dissolution and winding up of the partnership and
restoration of his partnership rights. The defendants filed a counterclaim,
special defenses and a claim of setoff. Following a trial to the court,
the trial court rendered judgment in favor of the defendants on the
complaint and on their special defenses, finding, inter alia, that the
plaintiff voluntarily withdrew as partner of the partnership, that C did
not waive the partnership's right to enforce a noncompete provision in
the partnership agreement, and that the plaintiff had agreed to terminate
his partnership interest as of June 30, 2013. On the plaintiff's appeal to
this court, *held*:

1. The plaintiff could not prevail on his claim that the trial court committed
   plain error by not ordering the dissolution of the partnership, which
   was based on his claim that the partnership could not continue to exist
   as a single partner partnership; the record was factually inadequate to
   permit this court to find an error so obvious that reversal was required,
   the plaintiff's claim that the partnership was a single partner partnership
   that could not exist pursuant to statute (§ 34-301 [12]) was not raised
   at trial and to allow him to raise the claim for the first time on appeal
   would permit trial by ambuscade, and even if the trial court committed
   error, no manifest injustice resulted from this court's refusal to entertain
   the claim newly raised on appeal, which contradicted the plaintiff's
   position in the trial court.

2. The plaintiff's claim that the trial court improperly estopped him from
   contesting the enforceability of a noncompete provision in the partner-
   ship agreement was unavailing; although that court stated that the plain-
   tiff was estopped from asserting that the noncompete provision was
   unenforceable, it did not apply the doctrine of estoppel to preclude the
   plaintiff from asserting his claim, as the court set forth the legal princi-
   ples that governed the plaintiff's claim but did not set forth any legal
   principles regarding estoppel, it addressed six reasons for its conclusion
   that the noncompete provision was enforceable, if the court had applied
   the doctrine of estoppel to bar the claim there would have been no need
   for it to have addressed the merits of the claim, and it was reasonable
   to interpret the court's discussion of estoppel as a comment on the
   plaintiff's credibility rather than an application of the doctrine.

3. The trial court's finding that C had not waived enforcement of the non-
   compete provision in the partnership agreement was not clearly errone-
   ous; the record supported the trial court's findings that C, as managing
   partner of the partnership, repeatedly asserted that the partnership
   agreement controlled the plaintiff's departure, despite statements that
   expressed his desire to avoid hurting the plaintiff, all of C's representa-
   tions were consistent with the terms of the noncompete provision in
   the partnership agreement, which did not prohibit a departing partner
   from continuing to practice accounting or from servicing former clients

of the partnership but required that the former partner compensate the partnership for any clients taken from the partnership.

4. The trial court incorrectly treated the noncompete provision as a liquidated damages clause and improperly failed to consider the reasonableness of the restraint imposed by the noncompete provision; because the plaintiff's actions did not constitute a breach of contract and the noncompete provision did not require that the plaintiff breach the partnership agreement before the partnership was entitled to compensation for work that the plaintiff performed for the partnership's former clients, the noncompete provision could not be viewed as a liquidated damages clause designed to fix compensation for a breach of contract, and given that the noncompete provision did not differ meaningfully from a prohibitive covenant not to compete, the enforceability of the noncompete provision had to be judged by the same standard used for covenants not to compete.

Argued December 11, 2017—officially released April 10, 2018

*Procedural History*

Action to recover damages for, inter alia, alleged breach of fiduciary duty, and for other relief, brought to the Superior Court in the judicial district of Danbury, where the defendants filed a counterclaim; thereafter, the matter was tried to the court, *Truglia, J.*; judgment in favor of the defendants on the complaint and in part on the counterclaim, from which the plaintiff appealed to this court. *Reversed in part; further proceedings.*

*Brendon P. Levesque*, with whom were *Karen L. Dowd* and, on the brief, *Scott T. Garosshen*, for the plaintiff (appellant).

*Daniel J. Krisch*, with whom was *Kevin J. Greene*, for the defendants (appellees).

*Opinion*

BRIGHT, J. The plaintiff, Derek J. DeLeo, appeals from the judgment of the trial court rendered in favor of the defendants, Equale & Cirone, LLP (partnership), and Anthony W. Cirone, Jr., on the plaintiff's complaint and the defendants' special defenses, claim of setoff, and counterclaim. Specifically, the plaintiff claims that the trial court (1) committed plain error when it failed to order the dissolution of the partnership; (2) improperly estopped him from challenging the noncompete provision in the partnership agreement; (3) improperly found that the defendants did not waive the enforcement of the noncompete provision; and (4) improperly concluded that the noncompete clause in the partnership agreement was enforceable. We agree with the plaintiff's final claim, and we, therefore, affirm in part and reverse in part the judgment of the trial court.

The following facts and procedural history, as found by the trial court or as undisputed in the record, are relevant to our review. The partnership, an accounting firm, is a limited liability partnership located in Bethel. Joseph A. Equale, Jr., and Cirone formed the partnership in 1999. In 2005, the plaintiff, a certified public accountant, joined the partnership as an equity partner. The partnership operated under an oral partnership agreement until January, 2009, when Equale, Cirone, and the plaintiff executed a written partnership agreement (partnership agreement). Pursuant to the partnership agreement, Cirone held a 40 percent interest, Equale held a 35 percent interest, and the plaintiff held a 25 percent interest. The partnership agreement was intended to govern all aspects of the partnership.

In January, 2012, the partnership purchased the assets of Allen & Tyransky, an accounting firm located in Danbury. As a result of the acquisition, Jack Tyransky became a nonequity "contract" partner of the partnership. Shortly after the acquisition of Allen & Tyransky, several of the partnership's employees began to suspect that the plaintiff was involved in a romantic relationship with a female staff accountant at the partnership. In October, 2012, Cirone learned about the suspicions regarding the plaintiff's relationship with the staff accountant. Thereafter, Cirone confronted the plaintiff about the alleged relationship, but the plaintiff denied any such relationship. Later, Cirone approached Equale, who was preparing to retire from the partnership at the end of 2012, to discuss the plaintiff's alleged relationship. Both Equale and Cirone decided to believe the plaintiff's denial, and they did not take any further action at that time.

Equale retired, effective January 1, 2013, but he continued to work for the partnership through the end of the 2013 tax season. Pursuant to the partnership agreement, Equale's shares were acquired by the part-

nership upon his retirement. Cirone and the plaintiff agreed that following Equale's retirement Cirone would own 62 percent of the partnership and the plaintiff would own the remaining 38 percent.

On April 26, 2013, after the completion of the 2013 tax season, Cirone, Tyranksy, and the plaintiff met at a diner to discuss the future of the partnership in light of the plaintiff's suspected relationship with the staff accountant. At this meeting,[1] Cirone told the plaintiff that they needed to fire the staff accountant and terminate their partnership. The court credited Cirone's testimony regarding this meeting, finding that "given [Cirone's] position as managing partner of the firm and also given the risks that [the plaintiff's] actions posed to the firm, [Cirone] had no choice but to separate [the plaintiff] from the partnership." The plaintiff and Cirone agreed that their business relationship had to end, and they acknowledged that any plan for the plaintiff's departure would begin with the partnership agreement.

Following their meeting, Cirone and the plaintiff exchanged several e-mails during May and June, 2013, regarding the plaintiff's departure from the partnership. In these e-mails, the plaintiff did not deny that he was leaving the partnership, and there was no indication that he believed that the partnership was being dissolved. Following these exchanges, Cirone sent an e-mail to the partnership's employees informing them that the plaintiff would be "transitioning out of the firm" beginning on June 17, 2013. The plaintiff retained his 38 percent partnership interest through June 30, 2013, and, after leaving the partnership, he continued to provide accounting services in New Milford. Following the plaintiff's departure, Cirone first transferred the plaintiff's interest in the partnership to himself, and then he transferred a 1 percent interest to Tyransky.

In September, 2013, approximately two months after leaving the partnership, the plaintiff commenced the present action against the defendants. The operative amended complaint was filed on September 29, 2014, and contained seven counts alleging, inter alia, that the plaintiff held a 38 percent interest in the partnership, and that Cirone had excluded him from the daily operations of the partnership. He further alleged that Cirone's conduct had frustrated the economic purpose of the partnership such that it was no longer reasonably practicable to continue the partnership's business in accordance with the partnership agreement. Additionally, the plaintiff alleged claims of breach of fiduciary duty and conversion. The plaintiff sought, inter alia, a dissolution and winding up of the partnership pursuant to General Statutes §§ 34-339 (b) (2) (C) and 34-372 (5); restoration of his partnership rights pursuant to § 34-339 (b) (1); an accounting and access to the partnership's books and records pursuant to General Statutes §§ 34-337 and 34-338; appointment of a receiver pursuant to General

Statutes § 52-509; and money damages.

On January 6, 2015, the defendants filed an answer denying the plaintiff's allegations or leaving him to his proof, asserted various special defenses and a claim for setoff. The defendants alleged the following special defenses: the plaintiff's complaint failed to state a claim upon which relief could be granted; the plaintiff's claims were barred by his own conduct and breach of fiduciary duties; the plaintiff's claims were barred by the doctrine of unclean hands; and the plaintiff had waived any claim against the defendants because he had terminated his partnership interest voluntarily. In their claim for setoff, the defendants alleged, inter alia, that the plaintiff was liable to the partnership for damages as a result of: self-dealing, violations of his fiduciary duties, and amounts due pursuant to the noncompete provision in the partnership agreement.

The defendants also filed a four count counterclaim against the plaintiff, claiming that the partnership had terminated the plaintiff's partnership interest for cause, or, in the alternative, that the plaintiff had terminated his partnership interest voluntarily. In both counts the defendants claimed that the value of the plaintiff's partnership interest was limited to the accrual basis capital value,[2] as defined in the partnership agreement. Additionally, the defendants claimed that the plaintiff is subject to the noncompete provision in the partnership agreement, requiring him to compensate the partnership for any former clients of the partnership for whom the plaintiff had provided accounting services following his departure. In counts three and four, the defendants alleged that the plaintiff breached his fiduciary duty pursuant to the partnership agreement and/or pursuant to §§ 34-338 and 34-339.

The plaintiff denied all the allegations as set forth in the defendants' special defenses and claim for setoff. He also denied the allegations in the defendants' counterclaim and, by way of special defense, asserted that the defendants had waived the enforcement of the noncompete provision.

The case was tried to the court over the course of six days in September, 2015. In its memorandum of decision dated October 22, 2015, the court rendered judgment in favor of the defendants on the plaintiff's complaint and the defendants' special defenses. The court did not credit the plaintiff's testimony, finding that the plaintiff, "through his words and actions, starting with the April 26 meeting through July of 2013, voluntarily withdrew as a partner of [the partnership]." The court credited Cirone's testimony, finding that Cirone did not waive the partnership's right to enforce the noncompete provision in the partnership agreement, and that the plaintiff had agreed to terminate his partnership interest as of June 30, 2013. The court further found that the voluntary termination provision[3] in the

partnership agreement determined the amount due to the plaintiff. Accordingly, the court rendered judgment in favor of the defendants on their counterclaim and on the plaintiff's special defense. The court awarded the defendants $740,783. The court credited the testimony of the defendants' expert witness with respect to the calculation of the plaintiff's accrual basis capital as of June 30, 2013, and the amount owed by the plaintiff to the partnership, pursuant to the noncompete provision in the partnership agreement. The court found that the plaintiff was overdrawn in his partnership income account by $143,496 as of June 30, 2013, and that his accrual basis capital as of June 30, 2013, was $165,079. The court also found that the plaintiff owed $762,366 to the partnership pursuant to the noncompete provision. This appeal followed.

## I

The plaintiff does not challenge on appeal the court's finding that he voluntarily withdrew from the partnership. Instead, he argues that the court committed plain error by not ordering the dissolution of the partnership because a single partner partnership cannot exist. At oral argument, the plaintiff conceded that this claim was not preserved pursuant to our rules of practice. Nevertheless, he contends that reversal is appropriate pursuant to the plain error doctrine. The defendants argue that this court should not review the plaintiff's claim because it contradicts the plaintiff's pleadings and arguments in the trial court. We agree with the defendants.

The following legal principles inform our review. "[T]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . In addition, the plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . .

"[Our Supreme Court] recently clarified the [two-pronged] framework under which we review claims of plain error. [Under the] [f]irst [prong], we must determine whether the trial court in fact committed an error and, if it did, whether that error was indeed plain in the sense that it is patent [or] readily discernable on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable. . . . [T]his inquiry entails a relatively high standard, under which it is not enough for the defendant simply to demonstrate that his position is correct. Rather, the party seeking plain error review must demonstrate that the claimed impropriety was so clear, obvious and indisputable as

to warrant the extraordinary remedy of reversal. . . .

"[U]nder the second prong of the analysis we must determine whether the consequences of the error are so grievous as to be fundamentally unfair or manifestly unjust. . . . Only if both prongs of the analysis are satisfied can the appealing party obtain relief." (Emphasis omitted; internal quotation marks omitted.) *Healey* v. *Haymond Law Firm, P.C.*, 174 Conn. App. 230, 245, 166 A.3d 10 (2017).

After filing the present appeal, the plaintiff filed a motion for articulation on September 19, 2016, requesting that the trial court state "the factual and legal basis for [its] finding that [the partnership] continued as a single partner partnership after the plaintiff's" voluntary departure on June 30, 2013. The court denied the motion for articulation, however, the court stated that "[t]he evidence at trial showed (and the court found) that [the partnership] (1) existed as a for profit venture between Cirone, [the plaintiff] and Tyransk[y] prior to [the plaintiff's] departure from the firm; and (2) continued after [the plaintiff's] departure between Cirone and Tyransk[y], with Cirone as an equity partner and Tyransk[y] as a nonequity contract partner."

Relying on the court's statement in its order denying his motion for articulation, the plaintiff contends that because the court found that Tyransky was not an equity partner of the partnership after the plaintiff's departure, the partnership could not have continued to exist. Therefore, according to the plaintiff, the court should have ordered the dissolution of the partnership. The plaintiff also argues that had the trial court properly ordered the dissolution of the partnership, the non-compete provision would have been inapplicable because the plaintiff could not have been in competition with a partnership that no longer existed. We cannot conclude under the facts and circumstances of this case that reversal for plain error is warranted.

First, there is not a factually adequate record. Although the plaintiff claims that "the trial court expressly found that the partnership continued . . . with . . . Tyransk[y] as a nonequity contract partner" after he withdrew from the partnership, he also acknowledges that "[t]he testimony at trial . . . conflicted as to when, if ever, Tyransky actually received the [1] percent equity interest." Indeed, the court's order denying the plaintiff's motion for articulation does not make any finding as to the duration of Tyransky's status as a "nonequity contract partner." Accordingly, this court cannot find an error so obvious that reversal is required on the basis of this record.

Second, it is axiomatic that this court "should not consider different theories or new questions if proof might have been offered to refute or overcome them had they been presented at trial. . . . Our rules of pro-

cedure do not allow a [party] to pursue one course of action at trial and later, on appeal, argue that a path he rejected should now be open to him. . . . To rule otherwise would permit trial by ambuscade." (Citation omitted; internal quotation marks omitted.) *Nweeia* v. *Nweeia*, 142 Conn. App. 613, 620, 64 A.3d 1251 (2013). At trial, the plaintiff did not claim that the partnership was a single partner partnership that could not exist pursuant to General Statutes §§ 34-301 (12).[4] In fact, the plaintiff argued the opposite position, claiming that he continued to hold a 38 percent interest in the partnership. He further alleged that Cirone unlawfully converted his 38 percent interest in the partnership and transferred 1 percent of that interest to Tyransky. In light of the plaintiff's pleadings and arguments at trial, the defendants had no reason to offer evidence regarding when Tyransky became a partner. To allow the plaintiff to raise this claim for the first time on appeal would permit trial by ambuscade. See id.

Finally, even if we assume that the trial court committed error in the present case, "no manifest injustice results from our refusal to entertain an argument fashioned anew for appellate purposes, particularly where the freshly minted argument contradicts the position that the plaintiff advanced in the trial court." *Gladstein* v. *Goldfield*, 163 Conn. App. 579, 586-87, 137 A.3d 60 (2016), appeal dismissed, 325 Conn. 418, 159 A.3d 661 (2017). Accordingly, we decline to apply the extraordinary remedy of plain error to rescue the plaintiff from his failed trial strategy.

## II

The plaintiff next claims that the court improperly estopped him from contesting the enforceability of the noncompete provision in the partnership agreement. The plaintiff argues that his inclusion of a payment pursuant to the noncompete provision as a line item in a submission for his divorce mediation "do[es] not satisfy the legal standard for any kind of estoppel." Although we agree with the plaintiff that estoppel does not apply under these circumstances, we conclude that the court did not apply any form of estoppel.

It is well established that "an opinion must be read as a whole, without particular portions read in isolation, to discern the parameters of its holding. . . . Furthermore, we read an ambiguous trial court record so as to support, rather than contradict, its judgment." *In re Nevaeh W.*, 317 Conn. 723, 733, 120 A.3d 1177 (2015). "Additionally, our appellate courts do not presume error on the part of the trial court. . . . Rather, we presume that the trial court, in rendering its judgment . . . undertook the proper analysis of the law and the facts." (Citations omitted; internal quotation marks omitted.) *Rogan* v. *Rungee*, 165 Conn. App. 209, 223, 140 A.3d 979 (2016).

The trial court addressed the plaintiff's claim that the noncompete provision was unenforceable because it was a penalty. After setting forth the legal standard for determining whether a particular provision in a contract is for liquidated damages or is an unenforceable penalty, the court then proceeded to evaluate the noncompete provision, listing six reasons supporting its conclusion that the amount due pursuant to the noncompete provision is for liquidated damages. In the final two sentences of its analysis, the court stated that "[the plaintiff] included the noncompete payment as a line item in his calculation of the value of his partnership in his divorce mediation submission. . . . He is, therefore, *estopped* from asserting that the noncompete provision is unenforceable." (Emphasis added.)

Although the court stated that the plaintiff is estopped from asserting that the noncompete provision is unenforceable, our review of the court's decision convinces us that the court did not apply the doctrine of estoppel to bar the plaintiff's claim. First, the court correctly set forth the legal principles governing the plaintiff's claim,[5] but did not set forth any legal principles regarding estoppel. Second, the court addressed *six reasons* for its conclusion that the noncompete provision was enforceable, before stating that the plaintiff was "estopped" from challenging it. Thus, the plaintiff's interpretation of the court's decision is in tension with the court's entire discussion of his claim. Indeed, if the court had applied the doctrine of estoppel to bar the claim, there would have been no need for it to have addressed the merits of the plaintiff's claim. See *State* v. *Jones*, 98 Conn. App. 695, 696, 911 A.2d 353 (2006) ("[b]ecause we conclude that the defendant's claim is barred by the doctrine of res judicata, we do not review the merits of his claim"), cert. denied, 281 Conn. 916, 917 A.2d 1000 (2007). Furthermore, in the context of the whole opinion, it is reasonable to interpret the court's discussion of estoppel as a comment on the plaintiff's credibility rather than an application of the judicial doctrine of estoppel. In fact, the court acknowledged that it considered the plaintiff's conflicting position in his divorce case when it assessed his credibility.[6] Accordingly, after reviewing the court's memorandum of decision in its entirety, we conclude that the court did not apply any form of estoppel to preclude the plaintiff from asserting that the noncompete provision was unenforceable. For that reason, we find no error.

### III

The plaintiff also claims that the court improperly found that Cirone had not waived enforcement of the noncompete provision in the partnership agreement. We disagree.

"Waiver is the intentional relinquishment of a known right. . . . Intention to relinquish [must] appear, but

acts and conduct inconsistent with intention [to assert a right] are sufficient. . . . Thus, [w]aiver does not have to be express, but may consist of acts or conduct from which waiver may be implied. . . . In other words, waiver may be inferred from the circumstances if it is reasonable to do so. . . . Whether conduct constitutes a waiver is a question of fact. . . . Our review therefore is limited to whether the judgment is clearly erroneous or contrary to law." (Internal quotation marks omitted.) *R.S. Silver Enterprises, Inc.* v. *Pascarella*, 163 Conn. App. 1, 32, 134 A.3d 662, cert. denied, 320 Conn. 929, 133 A.3d 460 (2016). "A court's determination is clearly erroneous only in cases in which the record contains no evidence to support it, or in cases in which there is evidence, but the reviewing court is left with the definite and firm conviction that a mistake has been made." (Internal quotation marks omitted.) *Coppola Construction Co.* v. *Hoffman Enterprises Ltd. Partnership*, 157 Conn. App. 139, 181, 117 A.3d 876, certs. denied, 318 Conn. 902, 122 A.3d 631, 123 A.3d 882 (2015).

The plaintiff has failed to establish that the court's factual finding was clearly erroneous. The plaintiff directs this court to portions of the April 26, 2013 conversation that he believes support his position that Cirone waived the noncompete provision. The plaintiff contends that Cirone expressed his desire not to hurt him, and Cirone acknowledged that the clients would decide to go with whomever they wanted. He further contends that Cirone encouraged him to take his clients, and that Cirone never expressed an intention to enforce the noncompete provision until the plaintiff commenced this action. According to the plaintiff, Cirone's conduct and representations caused him to believe that he "could rest assured that his book of business would be permitted to leave with him, unassailed by [the partnership's] enforcement of the noncompete [provision]."

The court, however, found that Cirone, as managing partner of the partnership, did not "waive the firm's rights to receive amounts due pursuant to the noncompete provision." Additionally, the court found that "[a]t no point during the April 26 meeting or later in their e-mail correspondence did [the plaintiff] deny the existence or enforceability of the partnership agreement." Our review of the record supports the court's findings. Specifically, during the recorded conversation on April 26, 2013, Cirone asked the plaintiff if he had a copy of the partnership agreement. The plaintiff replied: "I have it. I know it in and out." Cirone confirmed: "[T]hat's what we're gonna follow." Then, again, at the end of that conversation, Cirone stated: "[W]e are not gonna try to stop any client of the firm from leaving with you. We've only gotta discuss how it's gonna work in [the] confines [of] the partnership agreement."

Despite Cirone's statements expressing his desire to avoid hurting the plaintiff, Cirone repeatedly asserted that the partnership agreement controlled the plaintiff's departure. Moreover, all of Cirone's representations are consistent with the terms of the noncompete provision in the partnership agreement.[7] The noncompete provision does not prohibit a departing partner from continuing to practice accounting or from servicing former clients of the partnership. The provision requires that a former partner compensate the partnership for any clients that he or she takes from the partnership. Thus, the evidence adduced at trial supports the court's finding that Cirone did not waive the partnership's rights pursuant to the partnership agreement. Because there is evidence in the record to support the court's finding, we conclude that the court's finding was not clearly erroneous.[8]

IV

The plaintiff's final claim is that the trial court improperly concluded that the noncompete provision was enforceable. Specifically, he argues that the noncompete provision is a restraint of trade and, accordingly, the court improperly failed to evaluate the reasonableness of the restraint. The defendants argue that the noncompete provision is not a restraint of trade and thus not subject to a reasonableness analysis. Instead, the defendants claim that the noncompete provision is, in reality, an inaptly titled liquidated damages clause. We agree with the plaintiff.[9]

Our review of the plaintiff's claim requires us to construe the contract. "[W]ith any issue of contract interpretation, we begin with the language of the contract. . . . Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." (Citation omitted; internal quotation marks omitted.) *Financial Freedom Acquisition, LLC* v. *Griffin*, 176 Conn. App. 314, 338–39, 170 A.3d 41, cert. denied, 327 Conn. 931, 171 A.3d 454 (2017). The relevant language in the partnership agreement is plain and unambiguous and, therefore, our review is plenary.

The language of the noncompete provision cannot be read as a liquidated damages clause. "A provision for liquidated damages . . . is one the real purpose of which is to fix fair compensation to the injured party for a breach of contract." (Internal quotation marks omitted.) *Tsiropoulos* v. *Radigan*, 163 Conn. App. 122, 127–28, 133 A.3d 898 (2016). In the present case, the noncompete provision does not require that the plaintiff breach the partnership agreement before the partnership is entitled to compensation for work that the plaintiff performs for the partnership's former clients. In

fact, under the terms of the partnership agreement, the plaintiff had every right to provide services to former clients of the partnership; he just had to compensate the partnership if he did so. Because the plaintiff's actions do not constitute a breach of contract, the noncompete provision cannot be viewed as a liquidated damages clause designed to fix compensation for a breach of contract.

Instead, under controlling law, the noncompete provision is exactly that because it imposes a financial disincentive on the plaintiff to deter competition with the partnership. In the present case, the noncompete provision[10] in the partnership agreement requires a former partner to forfeit his Deferred Income Amount[11] if the partner provides any accounting, auditing, tax or consulting services for one of the partnership's former clients during the first five years following his departure from the partnership. Additionally, the former partner is required to pay 150 percent of the average annual fees that the partnership billed to the former client during the previous two years prior to the partner's departure. The provision does not prohibit a former partner from providing accounting services to former clients of the partnership; rather, it requires that the former partner compensate the partnership. Simply put, a partner may leave the partnership and engage in the business of accounting subject to certain economic disincentives.

Our interpretation of the noncompete provision at issue in this case is controlled by our Supreme Court's decision in *Deming* v. *Nationwide Mutual Ins. Co.*, 279 Conn. 745, 761, 905 A.2d 623 (2006). In *Deming*, the court considered whether a forfeiture provision in an employment contract was, in effect, a covenant not to compete. Id., 760–68. The provision provided that if an employee engaged in certain competitive conduct, following the cancellation of the contract, the employee would forfeit any deferred compensation that had been earned during the employee's employment. Id., 750. The court recognized that "the contract does not require an employee's express promise not to compete after termination of employment; instead, it requires a forfeiture of the employee's benefits if he or she engages in competition after termination of employment." Id., 761. Nevertheless, the court concluded that the provision needed to be analyzed under the reasonableness test for covenants not to compete. Id., 767. The court reasoned that "[p]ermitting a forfeiture clause that is not subject to a reasonableness assessment is essentially no different than enforcing a covenant not to compete, which, not properly circumscribed, is the classic example of a direct restraint." Id., 768.

The facts of this case are also remarkably similar to those in *Holloway* v. *Faw, Casson & Co.*, 319 Md. 324, 572 A.2d 510 (1990), which our Supreme Court cited

with approval in *Deming*. See *Deming* v. *Nationwide Mutual Ins. Co.*, supra, 279 Conn. 767. In *Holloway*, the plaintiff, a former partner of an accounting firm, challenged provisions in the partnership agreement that required him to forfeit certain deferred income payments and pay the partnership "100% of the prior year's fees for any clients" for whom the departing partner continued to provide accounting services. *Holloway* v. *Faw Casson & Co.*, supra, 319 Md. 328. The Maryland Supreme Court held that "[t]he covenants in [the partnership agreement] are sufficiently similar to covenants not to compete to invoke, in general, the analysis applied under the law bearing on covenants not to compete." Id., 333.

In the present case, the noncompete provision does not differ meaningfully from a prohibitive covenant not to compete. Just as in *Deming* and *Holloway*, the partnership agreement imposes financial disincentives, including a forfeiture of the former partner's deferred income amount, instead of requiring a partner's express promise not to compete. The financial disincentives for competition discourage a former partner from continuing to provide accounting services to the partnership's clients. Thus, although the provision at issue is an indirect restraint on competition, much like the forfeiture provision at issue in *Deming*, it accomplishes the same result as a covenant not to compete: a restraint of trade. *Deming* v. *Nationwide Mutual Ins. Co.*, supra, 279 Conn. 767. "[A] covenant not to compete and a forfeiture upon competing are but alternative approaches to accomplish the same practical result. . . . When pruned to their quintessence, they tend to accomplish the same results and should be treated accordingly." (Internal quotation marks omitted.) Id., 768–69. Consequently, the enforceability of the noncompete provision must be judged by the same standard used for covenants not to compete.

"A covenant that restricts the activities of an employee following the termination of his employment is valid and enforceable if the restraint is reasonable." *New Haven Tobacco Co.* v. *Perrelli*, 18 Conn. App. 531, 533, 559 A.2d 715, cert. denied, 212 Conn. 809, 564 A.2d 1071 (1989). Whether a restraint is reasonable "depends upon the competing needs of the parties as well as the needs of the public. These needs include: (1) the employer's need to protect legitimate business interests, such as trade secrets and customer lists; (2) the employee's need to earn a living; and (3) the public's need to secure the employee's presence in the labor pool." *Deming* v. *Nationwide Mutual Ins. Co.*, supra, 279 Conn. 761.

In his posttrial brief, the plaintiff argued that the noncompete provision is unenforceable because it is unreasonable as a matter of law. He claimed that enforcement would "eliminate [his] ability to pursue

his occupation in an economically tenable way." The court, however, did not consider the reasonableness of the restraint imposed by the noncompete provision. Instead, the court concluded that the noncompete provision was enforceable as a liquidated damages provision. For the reasons set forth previously in this opinion, we conclude that the court incorrectly treated the noncompete provision as a liquidated damages clause and improperly failed to consider the reasonableness of the restraint imposed by the noncompete provision.

The judgment is reversed only as to the award of damages pursuant to count two of the defendants' counterclaim and the case is remanded for further proceedings limited to determining whether the noncompete provision in the partnership agreement is reasonable under applicable law; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] The plaintiff secretly recorded this meeting on his cell phone and the parties agreed to enter a transcript of the recording into evidence.

[2] Section II E of the partnership agreement defines accrual basis capital value as "the cash basis financial statement prepared by the [partnership] on a monthly basis modified for inclusion of accounts receivable as defined in [Item F] and work in process in [Item G] with the appropriate adjustments for liabilities and expense accruals including but not limited to payroll accruals, malpractice accruals, and other operating expenses." (Emphasis omitted.)

[3] Section III D 1 of the partnership agreement provides in relevant part: "Any Partner may terminate his interest in the [partnership] at any time provided that the Partner gives the partnership at least one hundred eighty (180) days prior notice in writing of his intention to terminate his interest . . . . The only amounts that will be due to such Partner will be his [accrual basis capital], unless, at the discretion of the remaining Partners, they choose to provide any additional payments. . . . As noted in part F3 of Section III of this Agreement, the withdrawing partner is subject to the [noncompete provision] of that section." (Emphasis omitted.)

[4] General Statutes § 34-301 (12) defines a partnership as "an association of two or more persons to carry on as co-owners a business for profit . . . ."

[5] Although the court applied the correct test for determining whether a contractual provision for payment of money arising out of a breach of contract is a liquidated damages clause or an unenforceable penalty, for the reasons set forth in part IV of this opinion, that was not the correct legal test to apply to the noncompete provision at issue in the present case, which cannot properly be considered either a liquidated damages clause or an unenforceable penalty.

[6] The court stated: "Although it is not necessary to the court's final determination in this case, when evaluating [the plaintiff's] credibility, the court also takes into consideration [his] calculation of the value of his partnership interest in the divorce case. The court finds it highly suspect that [he] would value his partnership interest in the dissolution of marriage action in 2013 or 2014 as $354,000, and then attempt to value it at $1,300,000 in this case less than a year later."

[7] The noncompete provision is contained in Section III F 3 of the partnership agreement. It provides in relevant part: "If during the (5) five year period after any retirement/withdrawal/termination [of a partner] he provides any accounting, auditing, tax or consulting services for a client that was represented by the [partnership] during the two (2) year period prior to his termination, he will pay to [the partnership] as compensation for the goodwill and know-how of [the partnership] relating to such client an amount equal to 150% of the total average annual fees billed to such client or to any related persons or entities by the [partnership] during the two (2) year period prior to such termination. Such amount shall be payable to the partnership in equal monthly installments over the 36 month period commencing with the date of termination. At the option of [the partnership], such installments may be recovered by the [partnership] by set-off against any payments that

may be due to such [p]artner by the [partnership]. . . . Any [p]artner who violates the noncompete provisions of this section is not entitled to any [Deferred Income Amount] payments. . . ." (Emphasis omitted.)

[8] The plaintiff also argues that Cirone's "representation that the noncompete [provision] would be waived induced substantial reliance by the plaintiff that would result in severe detriment if the noncompete's enforcement is not estopped." As noted previously, the trial court found that Cirone made no such representation. Consequently, there was no representation of waiver on which the plaintiff could rely. Accordingly, we reject the plaintiff's equitable estoppel argument.

[9] Because we agree with the plaintiff that the trial court erred in failing to evaluate the reasonableness of the noncompete provision, we do not address his argument that the noncompete provision is an unenforceable penalty.

[10] See footnote 7 of this opinion for the relevant portion of the noncompete provision.

[11] Section III F 2 (b) of the partnership agreement provides that Deferred Income Amount "will equal the Goodwill value for the most recently completed fiscal year computed by taking two (2) times the average of the partner's past three years' total annual compensation (per IRS form K1)." (Emphasis omitted.)