CHRISTINE MUSOLINO *v.* DANIEL MUSOLINO
(AC 30612)

Gruendel, Lavine and Alvord, Js.

Argued January 4—officially released June 8, 2010

*Christopher G. Winans*, for the appellant (plaintiff).

*Stephen C. Gallagher*, for the appellee (defendant).

*Opinion*

GRUENDEL, J. The plaintiff, Christine Musolino, appeals from the judgment of the trial court granting

her motion for clarification of a support obligation concerning the defendant, Daniel Musolino. The plaintiff claims that the court abused its discretion in so doing. We affirm the judgment of the trial court.

The record discloses the following relevant facts. The parties married in 1987, and two children were born of the marriage. Following the subsequent breakdown of their marriage, the plaintiff filed a complaint seeking dissolution thereof, and a hearing followed. At that hearing, the plaintiff appeared with counsel; the defendant, incarcerated at that time, was self-represented. On August 5, 1999, the court, *Hon. Walter M. Pickett, Jr.*, judge trial referee, dissolved their marriage, finding that it had broken down irretrievably without attributing fault to either party as to the cause. The court further entered certain orders. Pertinent to this appeal is the following order: "A Visa bill in the amount of $1200 shall be the sole responsibility of the defendant." Counsel for the plaintiff thereafter prepared a judgment file that included the aforementioned order.[1]

Following the defendant's release from incarceration in 2004, he filed a petition for bankruptcy protection pursuant to chapter 7 of the United States Bankruptcy Code. He informed the plaintiff of that proceeding, in which she was not named as a creditor. The defendant thereafter was granted a discharge in bankruptcy.

More than eight years after the judgment of dissolution entered, the plaintiff on December 26, 2007, filed a motion for contempt concerning, inter alia, the Visa bill order. Before the court acted on that motion, the plaintiff on March 20, 2008, filed a "motion for articulation and/or clarification" in which she alleged that the order in question contained an incorrect figure: "[T]he judgment . . . reads [that the] $1200 Visa bill [is the]

---

[1] The relevant portion of the judgment file provided: "The [d]efendant is solely responsible for the [Visa] bill in the amount of $1200.00."

sole resp[onsibility] of [the defendant]. . . . At the time of the judgment, the bill was $12,000, not $1200. Fortunately, there was only one Visa bill so, of factual necessity, the only issue is whether the [d]efendant gets the value of the scrivener misplacing a zero. . . . [T]he [d]efendant has asserted that because the judgment says [$1200], not [$12,000], he is only responsible for the former, not the latter." (Internal quotation marks omitted.) In support thereof, the plaintiff submitted a transcript of the August 5, 1999 dissolution proceeding, at which the plaintiff testified that there existed a $12,000 Visa bill.

By order filed November 14, 2008, the court, *Roche*, *J.*, addressed the December 26, 2007 motion for contempt and the March 20, 2008 "motion for articulation and/or clarification," which the court termed a "motion to determine certain arrearages/debts that may be owed by the defendant to the plaintiff . . . ." In doing so, the court interpreted the clarification motion as a modification motion without objection from the parties. In that order, the court found that "the credit limitation amount on the subject Visa credit card was $5000 to be split evenly and in equity between the parties ($2500 each), in which the defendant's share is found to be a domestic support order and, therefore, should not be dischargeable in bankruptcy with the remaining balance of this Visa account the responsibility of the plaintiff. . . . No contempt is found against the defendant . . . ."

The court expounded on that finding in its April 8, 2009 memorandum of decision. It stated in relevant part: "The court . . . finds that the defendant's share of the balance on the Visa credit card is a domestic support order and, therefore, is not dischargeable in bankruptcy. . . . Under 11 U.S.C. § 523 (a) (5), a debtor may not discharge a debt to a former spouse that is for a domestic support obligation . . . . After

an application of the five factors from *Lewis* v. *Lewis*, [35 Conn. App. 622, 627–28, 646 A.2d 273 (1994)], that are used to distinguish a domestic support obligation from a property settlement in the dissolution action and a careful review of the evidence and facts, this court concludes that the defendant's obligation to pay the Visa credit card bill is a domestic support obligation. As a result, [that] debt is not dischargeable and the defendant must pay his share of that debt.

"The remaining balance on this credit card account is the responsibility of the plaintiff. Visa obtained a judgment against the plaintiff in the amount of $17,207.56 for the joint credit card held by her and the defendant. The August 5, 1999 dissolution decree ordered that the defendant was to be solely responsible for the Visa bill in the amount of $1200. At the October 3, 2008 motion for contempt hearing, during the cross-examination of the plaintiff, the following colloquy occurred:

"[The Defendant's Counsel]: Now, with respect to the judgment on the Visa account, were you served with a lawsuit on behalf of Visa in 2004?

"[The Plaintiff]: I don't recall being—and I saw the proof of service and that it says in hand, but I don't recall receiving it, and as naive as I was back then, I probably looked at it and in raising my children on my own, I said, thank God I put it in the divorce decree and it's not my responsibility and I naively set it aside.

"[The Defendant's Counsel]: And did you subsequently receive motions for default from the attorneys that represented Visa?

"[The Plaintiff]: Yes. Occasionally. They didn't bombard me with anything.

"[The Defendant's Counsel]: But you didn't—in any—you didn't—

"[The Plaintiff]: Oh, and during the time [the defendant] was in prison full-time, since we are arguing that, I paid $10 a month to the credit card company to try to keep it until he got out so it wouldn't go into default. I did everything I could so this didn't happen.

"[The Defendant's Counsel]: But after you were served with a lawsuit you did nothing; is that correct?

"[The Plaintiff]: I'm sorry?

"[The Defendant's Counsel]: After you were served with a lawsuit for the collection of the Visa card, you did nothing; is that correct?

"[The Plaintiff]: I did nothing. No. I did nothing.

"[The Defendant's Counsel]: And you received motions for default.

"[The Plaintiff]: One, maybe.

"[The Defendant's Counsel]: And isn't it a fact that in 2007, you received a notice for the examination of a judgment debt; isn't that correct?

"[The Plaintiff]: The reopening, you mean?

"[The Defendant's Counsel]: No. You received a notice from the—or served rather with a motion for an examination of a judgment debtor on the file by the Visa's attorneys in 2007; isn't that correct?

"[The Plaintiff]: I was served? I don't recall being served.

"[The Defendant's Counsel]: But didn't you receive a motion for—to appear in court in August of 2007?

"[The Plaintiff]: No.

"[The Defendant's Counsel]: Didn't you in fact, at that point, contact [the defendant]?

"[The Plaintiff]: I received that they reopened the matter. I'm not, you know—that was my understanding of it, and that's when I contacted [the defendant].

"Based on the foregoing exchange, the court finds that the plaintiff allowed the Visa credit card to accumulate additional fees by not acting upon the notifications she received. Because of her lack of inquiry into the notices, the debt ballooned to over $17,000. There is no evidence that the defendant, who was incarcerated at that time, was aware of this situation. The plaintiff, therefore, should be responsible for the remaining balance on this Visa credit card account." (Citation omitted; internal quotation marks omitted.)

The plaintiff on April 24, 2009, subsequently filed a motion for further articulation, which the court granted. In its May 12, 2009 articulation, the court stated: "[I]n the November 14, 2008 decision, this court relied on the best available evidence [regarding] the original judgment rendered by a deceased judge . . . and found that the balance on the subject Visa credit card was $12,000, not $1200. The credit limit on this card was $5000, which the court found the respective parties to be equally responsible for in its order . . . and articulation . . . . The remaining balance in whatever amount would remain the responsibility of the plaintiff. Whether the difference was brought about by error or misunderstanding by the parties, this court can make no finding. The finding by this court concerning the [parties'] liability under that card is clearly articulated in the [court's April 8, 2009 articulation]." This appeal followed.

We begin by noting what is not in dispute. The trial court concluded that the order pertaining to the Visa debt was a support order. The plaintiff does not challenge that determination on appeal.[2]

[2] Accordingly, we do not pass on the correctness of the court's determination. We further note that neither party noted the absence of an express finding by the court of a substantial change in circumstances, which we likewise do not address. Rather, we presume that the court properly analyzed

In light of that determination, our review is constrained to a consideration of whether the court's clarification and subsequent articulation regarding that support order was proper. That consideration is guided by the well established standard that "[a]n appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Thus, unless the trial court applied the wrong standard of law, its decision is accorded great deference because the trial court is in an advantageous position to assess the personal factors so significant in domestic relations cases. . . .

"With respect to the factual predicates for modification of [a support order], our standard of review is clear. This court may reject a factual finding if it is clearly erroneous, in that as a matter of law it is unsupported by the record, incorrect, or otherwise mistaken. . . . This court, of course, may not retry a case. . . . The factfinding function is vested in the trial court with its unique opportunity to view the evidence presented in a totality of circumstances, i.e., including its observations of the demeanor and conduct of the witnesses and parties, which is not fully reflected in the cold, printed record which is available to us. Appellate review of a factual finding, therefore, is limited both as a practical matter and as a matter of the fundamental difference between the role of the trial court and an appellate court. . . . A finding of fact is clearly erroneous when

that consideration in modifying the order at issue. See *DiBella* v. *Widlitz*, 207 Conn. 194, 203–204, 541 A.2d 91 (1988) ("[a]bsent a record that demonstrates that the trial court's reasoning was in error, we presume that the trial court correctly analyzed the law and the facts in rendering its judgment").

there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Korsgren* v. *Jones*, 108 Conn. App. 521, 525–26, 948 A.2d 358 (2008).

On appeal, the plaintiff claims that the present matter "involves the review of the parties' stipulated judgment as interpreted by the trial court on a contempt motion." As the defendant rightly observes, at no time before the trial court did the plaintiff ever claim that the underlying dissolution judgment was a stipulated judgment. Despite ample opportunity to do so, the plaintiff did not raise that claim in her December 26, 2007 motion for contempt, her March 20, 2008 "motion for articulation and/or clarification," her April 24, 2009 "motion for further articulation" or at the October 3, 2008 hearing before the court. To review a claim advanced for the first time on appeal and not raised before the trial court amounts to a trial by ambuscade of the trial judge. *Liberty Mutual Ins. Co.* v. *Lone Star Industries, Inc.*, 290 Conn. 767, 798, 967 A.2d 1 (2009). We therefore decline to afford review of this unpreserved contention.[3]

Under Connecticut law, the trial court is vested with discretion to modify support orders. See General Statutes § 46b-86. In both its April 8, 2009 memorandum of decision and its May 12, 2009 articulation thereof, the court detailed the factual findings underlying its decision regarding the disputed Visa debt, none of which the plaintiff has challenged as clearly erroneous on appeal. Having carefully considered those findings in

[3] In addition, counsel for the plaintiff represented at oral argument that no concrete evidence of a stipulated judgment exists in the record before us. Rather, he maintained that the existence of a stipulated judgment "must be inferred."

the context of the record before us and allowing every reasonable presumption in favor of the correctness of the court's action as our standard of review requires, we cannot say that the court abused its discretion in the present case.

The judgment is affirmed.

In this opinion the other judges concurred.