******************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

*Syllabus*

The defendant, whose marriage to the plaintiff previously had been dissolved, appealed to this court from the judgment of the trial court resolving certain postjudgment motions. The trial court had incorporated into the dissolution judgment the terms of an agreement between the parties, which included a retirement asset provision that required the plaintiff to transfer to the defendant via a qualified domestic relations order, 50 percent of the value of the marital portion of his benefit in a certain retirement fund, minus the amount of the defendant's social security benefit. After the plaintiff submitted a proposed qualified domestic relations order to the defendant, the defendant refused to sign it, and the plaintiff filed a motion to compel, which sought a court order requiring the defendant to execute the proposed qualified domestic relations order. Thereafter, the defendant filed a motion to open the dissolution judgment on the grounds of mutual mistake and unilateral mistake, and on the basis of equitable principles. She claimed that the relevant part of the retirement asset provision that required the amount of her anticipated future social security benefit to be subtracted from the amount of her share of the plaintiff's pension benefit was entered upon mutual mistake, and provided an inequitable and unconscionable windfall to the plaintiff. At a hearing on the parties' motions, the trial court granted a motion in limine filed by the plaintiff, which sought to preclude the defendant from presenting parol evidence in support of her motion to open the judgment. The court subsequently denied the defendant's motion to open, granted the plaintiff's motion to compel and ordered the defendant to sign the qualified domestic relations order. On the defendant's appeal to this court, *held* that the trial court erroneously determined that the retirement asset provision of the parties' agreement was unambiguous, as the language of the provision was susceptible to more than one reasonable interpretation: in light of the language in the provision, there was more than one possible approach to calculating the amount of the defendant's social security benefit and, therefore, the provision was ambiguous, and because the court's underlying determination that the provision was unambiguous was erroneous, its subsequent conclusion that the evidence regarding the intent of the parties was irrelevant necessarily also was erroneous; accordingly, a remand to the trial court was necessary for the court to hold a new hearing on the parties' motions and to determine the intent of the parties after consideration of all the available extrinsic evidence and the circumstances surrounding the entering of the agreement.

Argued March 19—officially released June 18, 2019

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Hartford and tried to the court, *Suarez, J.*; judgment dissolving the marriage and granting certain other relief; thereafter, the court, *Nastri, J.*, granted the plaintiff's motion in limine, denied the defendant's motion to open the judgment, and granted the plaintiff's motion to compel; subsequently, the court, *Nastri, J.*, denied the defendant's motion to reargue, and the defendant appealed to this court; thereafter, the court, *Nastri, J.*, granted in part the defendant's motion for articulation; subsequently, this court granted the defendant's motion

for review but denied the relief requested therein. *Reversed*; *further proceedings*.

*Brandon B. Fontaine*, with whom, on the brief, was *C. Michael Budlong*, for the appellant (defendant).

*Steven R. Dembo*, with whom were *Caitlin E. Kozloski* and, on the brief, *P. Jo Anne Burgh*, for the appellee (plaintiff).

*Opinion*

ALVORD, J. In this marital dissolution action brought by the plaintiff, Hector L. Casablanca, the defendant, Anolan Casablanca, appeals from the judgment of the trial court resolving certain postjudgment motions. On appeal, the defendant claims that the court erred by (1) granting the plaintiff's motion to compel the defendant to execute the plaintiff's proposed qualified domestic relations order (QDRO)[1] and (2) granting the plaintiff's motion in limine to preclude the defendant from offering parol evidence in support of her motion to open the dissolution judgment. We conclude, contrary to the decision of the trial court, that the provision of the dissolution settlement agreement at issue in this case is ambiguous. Thus, we determine that the court should have considered extrinsic evidence of, and made additional factual findings regarding, the parties' intent in agreeing to this provision before it denied the defendant's motion to open the judgment and adjudicated the plaintiff's motion to compel the defendant to sign the proposed QDRO. Accordingly, we reverse the judgment of the court and remand this case for further proceedings.

The record reveals the following relevant facts and procedural history. The parties were married on July 23, 2005. The parties' marriage was dissolved on January 21, 2016. On that date, the parties entered into a separation agreement (agreement). Article 11 of the agreement (retirement asset provision), titled "Retirement/Stock Accounts," provided: "The husband shall transfer to the wife, via QDRO, fifty (50%) percent of the value of the marital portion of his benefit under the City of Hartford Municipal Retirement fund, valued as of date of dissolution, minus the amount of the wife's Social Security Benefit. The assigned benefit shall be paid as a separate interest payment over the life of the wife. The husband shall retain his Mass Mutual 457 Plan and wife shall make no claim to same. Attorney Jeffrey Winnick shall prepare said QDRO(s) and the parties shall be equally responsible for the cost of same." The court, *Suarez, J.*, found the agreement fair and equitable and incorporated its terms into the dissolution judgment. Attorney Winnick subsequently prepared a proposed QDRO and transmitted it to the parties. The defendant refused to sign it.

On May 23, 2016, the defendant filed the first of a series of motions to open the dissolution judgment.[2] On October 25, 2016, the plaintiff filed a motion captioned "motion to compel," which sought a court order requiring the defendant to execute the proposed QDRO.[3] On February 14, 2017, the defendant filed the operative motion to open the dissolution judgment on grounds of mutual mistake and unilateral mistake, and on the basis of equitable principles. Specifically, she contended that the relevant part of the retirement asset

provision, the phrase " 'minus the amount of the wife's Social Security Benefit,' was entered upon mutual mistake of the parties." In her memorandum of law in support of the motion, the defendant maintained that the intent of the parties was to equalize the plaintiff's retirement pension benefits and the defendant's social security benefits. According to the defendant, she was to receive 50 percent of the marital portion of the plaintiff's monthly pension benefit until she became eligible to receive social security benefits some thirty years in the future, whereupon her assigned portion of the monthly pension benefit would be reduced by the amount of her monthly social security benefit she was then receiving.

Under the proposed QDRO, however, the defendant's share of the pension benefit was reduced by immediately subtracting her anticipated future social security benefit amount of $1479 a month at her full retirement age (sixty-seven years old), which resulted in a current monthly retirement asset payment to the defendant of $242.75. She argued that because she was not entitled to receive her social security benefit until age sixty-five, approximately thirty years in the future, the proposed QDRO provided the plaintiff with "an inequitable and unconscionable windfall of $1479 per month . . . ."

On February 22, 2017, the parties appeared for a hearing on the defendant's motion to open the judgment and the plaintiff's motion to compel. On the day of the hearing, the plaintiff filed a motion in limine seeking to preclude the defendant from presenting parol evidence, including testimony of the defendant herself, in support of her motion to open the judgment.[4] According to the plaintiff, the agreement was fully integrated and therefore no evidence could be introduced to vary or contradict its terms. The plaintiff also argued that even if the defendant was permitted to testify that she was mistaken as to the language of the retirement asset provision, her claim of mutual mistake would necessarily fail on the basis that the plaintiff would testify in opposition that the provision accurately reflected the parties' intent. After hearing oral argument on the motion in limine, the court, *Nastri, J.*, granted the motion in part, stating: "The parol evidence rule prohibits the use of extrinsic evidence to vary [or] to contradict the terms . . . of a fully integrated written contract. The parties' separation agreement is a fully integrated written contract, therefore the motion in limine is granted, the court will not hear parol evidence." As to the second ground challenging the merits of the defendant's mutual mistake claim, the court stated: "I'm not going to grant the motion in limine on that basis." The court then asked whether the defendant's counsel was prepared to proceed, to which counsel replied: "I'm not quite sure then, the court will not accept testimony from my client?" The court responded: "Well the court will not accept testimony that is contrary to the written

contract. I don't know what your client is prepared to testify to or what the substantive evidence is, but the court will not hear parol evidence."

The court then held an evidentiary hearing, during which the defendant presented the testimony of the defendant, Attorney Winnick, Attorney Kim Duell (who represented the plaintiff during the dissolution proceedings), and the plaintiff. The attorney who represented the defendant during the dissolution proceedings did not testify. See footnote 4 of this opinion. At the conclusion of the hearing, the court issued an oral ruling denying the motion to open. It stated: "The court finds that there was no mutuality of mistake, there's no mutual mistake or any unilateral mistake and [it] is not unconscionable or inequitable to enforce the contract. The parties entered the agreement knowingly, voluntarily and intelligently with the assistance of competent counsel. Judge Suarez canvassed the parties and made a finding that the agreement was fair and equitable." Without hearing further evidence, the court thereafter granted the plaintiff's motion to compel and, affording the defendant sufficient time to take an appeal from the decision, ordered the defendant to sign the QDRO on or before March 24, 2017. The court subsequently issued a written order to the same effect.

On March 14, 2017, the defendant filed a motion to reargue the court's February 22, 2017 rulings. In her motion, she argued that the court's granting of the motion in limine improperly precluded her from eliciting testimony as to the intent of the parties, which would have been offered in support of her claims of mutual and unilateral mistake.[5] She further argued that the testimony she sought to introduce in support of her motion to open did not constitute parol evidence because, as evidence of the parties' intent, it was not introduced to vary or contradict the terms of the agreement. The plaintiff filed an objection on March 21, 2017. The court denied the motion to reargue on the papers without comment, and this appeal followed.

The defendant sought articulation of the court's decision denying the motion to reargue and its February 22, 2017 orders. The defendant's fifth request asked the court to articulate "whether, when granting the plaintiff's motion in limine . . . to exclude parol evidence and when enforcing that ruling during the February 22, 2017 hearing, the court: (a) considered whether article 11 of the parties' separation agreement contained any relevant ambiguities, particularly regarding its proper application, and (b) determined that article 11 of the separation agreement is clear and unambiguous." The plaintiff objected on the basis that the defendant had not raised the issue of ambiguity during the hearing. Over the plaintiff's objection, the court granted the request for articulation in part. Answering question five in the affirmative, the court stated: "After carefully con-

sidering the arguments advanced in the defendant's motion to open, the testimony of the witnesses,[6] the well-articulated arguments of counsel and applicable case law, the court found no ambiguities in Article 11. In the absence of any ambiguity or uncertainty, the evidence the defendant [sought] to introduce regarding the intent of the parties or their object was irrelevant."[7] (Footnote added.) The defendant filed a motion for review of the court's partial denial of articulation. This court granted review but denied the relief requested.

On appeal, the defendant claims that the court erred by granting both the plaintiff's motion to compel the defendant to execute the proposed QDRO and the plaintiff's motion in limine to preclude parol evidence. We begin by addressing the defendant's claim of error as to the court's ruling on the motion to compel because our resolution of whether the court properly found the retirement asset provision unambiguous will inform our consideration of the defendant's claim that the trial court improperly excluded extrinsic evidence in support of her motion to open the judgment.

In his motion to compel, the plaintiff requested an order requiring the defendant to execute the QDRO. As support, the plaintiff cited to the retirement asset provision and a separate provision of the agreement requiring the parties to "execute such additional documents as may be necessary to carry out the provisions of this agreement." (Internal quotation marks omitted.) Captioned "motion to compel," the motion in substance sought enforcement of the agreement's retirement asset provision, which had been incorporated into the dissolution judgment. In order to grant the motion and order compliance with the judgment in the manner requested by the plaintiff, however, the court necessarily had to determine that the judgment was clear. See *Rozbicki* v. *Gisselbrecht*, 152 Conn. App. 840, 847, 100 A.3d 909 (2014) ("[t]he trial court's continuing jurisdiction to effectuate its prior judgments, either by summarily ordering compliance with a clear judgment or by interpreting an ambiguous judgment and entering orders to effectuate the judgment as interpreted, is grounded in its inherent powers, and is not limited to cases wherein the noncompliant party is in contempt, family cases, cases involving injunctions, or cases wherein the parties have agreed to continuing jurisdiction" [internal quotation marks omitted]), cert. denied, 315 Conn. 922, 108 A.3d 1123 (2015).[8] Likewise, "[a] trial court has the inherent power to enforce summarily a settlement agreement as a matter of law when the terms of the agreement are clear and unambiguous." *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, 225 Conn. 804, 811, 626 A.2d 729 (1993); see also *Matos* v. *Ortiz*, 166 Conn. App. 775, 777, 144 A.3d 425 (2016) ("[i]t is well established that a court may summarily enforce—within the framework of existing litigation—a clear and unambiguous settlement agreement

reached during that litigation").

It is evident from the trial court's articulation that it did consider whether the retirement asset provision was ambiguous and expressly concluded that it was unambiguous. The court articulated as follows: "After carefully considering the arguments advanced in the defendant's motion to open, the testimony of the witnesses, the well-articulated arguments of counsel and applicable case law, the court found no ambiguities in article 11." We disagree with this legal determination.

At the outset, we address the plaintiff's argument that this court should decline to review the defendant's claim of error as to the granting of the motion to compel. He argues that the defendant, in failing to file a written objection or to raise objection at the hearing, induced or invited the granting of the motion to compel. We first note that the plaintiff does not direct this court's attention to any authority requiring that the defendant file a written objection to his motion. Furthermore, the defendant's counsel opposed the motion through his attempt to elicit the defendant's testimony as to why she did not sign the QDRO when it was presented to her. However, counsel was unable to pursue this line of questioning, as the plaintiff's counsel objected to the questioning of the defendant regarding her defense to the motion. The plaintiff's counsel stated, "I'm going to object in so far as it seeks to vary, contradict, and it would be law of the case in terms of your ruling," and the court sustained the objection.[9] Moreover, the record reflects that the court viewed the motion to compel as contested. In responding to a question from the plaintiff's counsel regarding whether the parties would need to return, the court stated: "[W]ell it depends on what they take an appeal from, they may also appeal . . . from the order granting the motion to compel." We conclude that the defendant's claim of error as to the granting of the motion to compel is reviewable.[10]

We begin by setting forth relevant law and our standard of review. "It is well established that a separation agreement that has been incorporated into a dissolution decree and its resulting judgment must be regarded as a contract and construed in accordance with the general principles governing contracts. . . . When construing a contract, we seek to determine the intent of the parties from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . When only one interpretation of a contract is possible, the court need not look outside the four corners of the contract. . . . Extrinsic evidence is always admissible,

however, to explain an ambiguity appearing in the instrument. . . . When the language of a contract is ambiguous, the determination of the parties' intent is a question of fact. . . . When the language is clear and unambiguous, however, the contract must be given effect according to its terms, and the determination of the parties' intent is a question of law. . . .

"A contract is unambiguous when its language is clear and conveys a definite and precise intent. . . . The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity. . . . Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. . . .

"In contrast, a contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . [A]ny ambiguity in a contract must emanate from the language used by the parties. . . . The contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so. . . . If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous." (Internal quotation marks omitted.) *Gabriel* v. *Gabriel*, 324 Conn. 324, 341–42, 152 A.3d 1230 (2016). "[T]he construction of a written contract is a question of law for the court. . . . The scope of review in such cases is plenary." (Citations omitted; internal quotation marks omitted.) *Sachs* v. *Sachs*, 60 Conn. App. 337, 342, 759 A.2d 510 (2000).[11]

With these principles in mind, we turn to the retirement asset provision of the agreement in the present case, which states: "The husband shall transfer to the wife, via QDRO, fifty (50%) percent of the value of the marital portion of his benefit under the City of Hartford Municipal Retirement fund, valued as of date of dissolution, minus the amount of the wife's Social Security Benefit. The assigned benefit shall be paid as a separate interest payment over the life of the wife. The husband shall retain his Mass Mutual 457 Plan and wife shall make no claim to same. Attorney Jeffrey Winnick shall prepare said QDRO(s) and the parties shall be equally responsible for the cost of same." On the basis of the language in this provision, we conclude that there is more than one possible approach to calculating the amount of the defendant's social security benefit and, therefore, that the provision is ambiguous. The ambiguity of the retirement asset provision is framed by the plaintiff's Exhibit 4, the defendant's social security statement, which states, "Your payment would be about $1479 a month at full retirement age," and also states, on the first line: "You have earned enough credits to qualify for benefits. At your current earnings rate, if you continue working until . . . your full retirement

age (67 years), your payment would be about . . . $1479 a month; age 70, your payment would be about . . . $1834 a month; age 62, your payment would be about . . . $1030 a month."

There are at least three possible interpretations of the retirement asset provision. First, that provision could be interpreted as captured in the proposed QDRO, i.e., the defendant's estimated full retirement (age sixty-seven) payment of "about . . . $1479 a month" must be subtracted, as though it were commencing immediately, from the defendant's 50 percent assigned monthly benefit. Second, the provision could be read to require that the defendant receives her 50 percent assigned benefit until such time as she elects to receive her social security benefit,[12] at which future time her 50 percent assigned benefit would be reduced by the monthly social security benefit she actually elects to receive. A third interpretation of the provision would require calculating the present lump sum equivalent of the defendant's future estimated full retirement (age sixty-seven) payment of "about . . . $1479 a month," which lump sum would then be converted to an immediate stream of payments, each of which would be subtracted from the 50 percent monthly assigned benefit.[13]

Because the language of the provision is susceptible to more than one reasonable interpretation, the court erroneously determined that the provision is unambiguous. See *Thomasi* v. *Thomasi*, 181 Conn. App. 822, 831, 188 A.3d 743 (2018) ("A word is ambiguous when it is capable of being interpreted by reasonably well informed persons in either of two or more senses. . . . Ambiguous can be defined as unclear or uncertain, or that which is susceptible of more than one interpretation, or understood in more ways than one." [Internal quotation marks omitted.]); *Schimenti* v. *Schimenti*, 181 Conn. App. 385, 398, 186 A.3d 739 (2018) ("[b]ecause the phrase 'initiation fee' in the modified judgment could have referred to any one of three available levels of membership in the Innis Arden Country Club, each with its distinct initiation fee, that phrase, as used in the modified judgment, was ambiguous").

On the basis of our conclusion that the court erroneously determined that the provision was unambiguous, we conclude that a remand to the trial court is necessary for the court to hold a new hearing on the parties' motions[14] and to determine the intent of the parties after consideration of all the available extrinsic evidence and the circumstances surrounding the entering of the agreement. See *Hirschfeld* v. *Machinist*, 181 Conn. App. 309, 328, 186 A.3d 771 (court was required to resolve ambiguity by considering extrinsic evidence and making factual findings as to parties' intent), cert. denied, 329 Conn. 913, 186 A.3d 1170 (2018); see also *Parisi* v. *Parisi*, 315 Conn. 370, 386, 107 A.3d 920 (2015) (remanding case to trial court to resolve ambiguity in

parties' separation agreement "through a determination of their intent after consideration of all available extrinsic evidence and the circumstances surrounding the entering of the agreement"); *Fazio* v. *Fazio*, 162 Conn. App. 236, 251, 131 A.3d 1162 (same), cert. denied, 320 Conn. 922, 132 A.3d 1095 (2016).

After stating in its articulation that it found no ambiguities in the retirement asset provision, the court continued: "In the absence of any ambiguity or uncertainty, the evidence the defendant [sought] to introduce regarding the intent of the parties or their object was irrelevant." Because the court's underlying determination that the provision was unambiguous was erroneous, its subsequent conclusion that the evidence regarding the intent of the parties was irrelevant necessarily also is erroneous. Because the issue may arise on remand, we note the general legal principles concerning the parol evidence rule and its exceptions.[15]

"Parol evidence offered solely to vary or contradict the written terms of an integrated contract is . . . legally irrelevant. When offered for that purpose, it is inadmissible not because it is parol evidence, but because it is irrelevant. By implication, such evidence may still be admissible if relevant (1) to explain an ambiguity appearing in the instrument; (2) to prove a collateral oral agreement which does not vary the terms of the writing; (3) to add a missing term in a writing which indicates on its face that it does not set forth the complete agreement; or (4) to show mistake or fraud. . . . These recognized exceptions are, of course, only examples of situations where the evidence (1) does not vary or contradict the contract's terms, or (2) may be considered because the contract has been shown not to be integrated, or (3) tends to show that the contract should be defeated or altered on the equitable ground that relief can be had against any deed or contract in writing founded in mistake or fraud." (Internal quotation marks omitted.) *Sullo Investments, LLC* v. *Moreau*, 151 Conn. App. 372, 378–79, 95 A.3d 1144 (2014); see *Hirschfeld* v. *Machinist*, supra, 181 Conn. App. 328 ("parol evidence, including conversations of those involved in drafting the contract, may be used as an aid in the determination of the intent of the parties which was expressed by the written words" [internal quotation marks omitted]).

This court cannot find facts in the first instance. See *Fazio* v. *Fazio*, supra, 162 Conn. App. 251. Thus, a remand is necessary for the trial court to hold a new hearing on the parties' motions[16] and to "determine the intent of the parties after consideration of all the available extrinsic evidence and the circumstances surrounding the entering of the agreement." Id.; see also *Parisi* v. *Parisi*, supra, 315 Conn. 386.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

[1] "A QDRO is the exclusive means by which to assign to a nonemployee spouse all or any portion of pension benefits provided by a plan that is governed by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq." (Internal quotation marks omitted.) *Richman* v. *Wallman*, 172 Conn. App. 616, 617 n.1, 161 A.3d 666 (2017).

[2] The May 23, 2016 motion to open was dismissed for lack of personal jurisdiction due to insufficiency of process and insufficiency of service of process. The motion to open the judgment that was adjudicated on its merits and is at issue in this appeal was filed February 14, 2017.

[3] On November 2, 2016, the plaintiff also filed a disclosure of expert witness, stating that Attorney Winnick was expected to testify concerning the QDRO "required by the judgment in this matter, the plaintiff's City of Hartford Municipal Retirement fund, the defendant's social security benefit and the calculation required to comply with the terms of the judgment." The disclosure further stated that Winnick would testify that he drafted the QDRO "in compliance with the terms of the judgment."

[4] Following a motion filed by the plaintiff to disqualify Attorney Frank Romeo from representing the defendant on the basis that he would be a necessary witness in connection with the motion to open the judgment, the court approved the parties' stipulation that Attorney Romeo "shall not provide any testimony or act as a witness of any type." The parties' stipulation, regardless of whether it should have been accepted by the court under the circumstances of this matter, as Attorney Romeo was the defendant's counsel at the time the separation agreement was executed, is no longer in effect on remand.

[5] Although she did not argue expressly that the evidence she sought to introduce as to intent was admissible to explain an ambiguity in the retirement asset provision, she argued relatedly as follows: "The intent of both parties upon entering into article 11 of the separation agreement was to equalize the value of [the plaintiff's] Hartford retirement pension with [the defendant], by assigning her 50 [percent] of his $5554/month pension, or $2777.02/month, from the date of dissolution, until she was eligible for Social Security benefits. This language fails to include precise language as to exactly when [the defendant] is eligible for social security benefits, [and] the definition of the exact benefit, although it is logically presumed [the defendant] would not be entitled to social security benefits until she reached the age of [sixty-five]. The vague language also does not account for if the [defendant] failed to reach the age of [sixty-five]. Thus, the vague language and omission of exact dates and explanation of the term 'benefit' makes it impossible to decipher the true intent of either party, making [the] plaintiff's assertion that mutual mistake does not exist . . . unfounded." (Emphasis omitted.)

[6] As noted previously, the attorney who represented the defendant during the dissolution proceedings did not testify. See footnote 4 of this opinion.

[7] As to a separate request for articulation regarding whether the QDRO properly conformed to the judgment, the court stated that the motion to open had not sought the court's determination of this issue, nor was it raised during the hearing.

[8] A threshold determination as to ambiguity likewise would have been required had the plaintiff sought relief by way of a motion for contempt and for order. See *Hansen* v. *Hansen*, 80 Conn. App. 609, 609, 612, 836 A.2d 1228 (2003) (affirming finding of contempt on basis that defendant refused to accede to proposed QDRO and holding that court did not abuse its discretion in refusing to hear evidence of parties' intent in formulating portion of marital dissolution agreement, where language was susceptible to only one meaning).

[9] In responding to the argument of the plaintiff's counsel on the motion to compel, the defendant's counsel stated: "I have to talk to my client to see if she's going to appeal this, but certainly the court can order whatever the court wants." He further stated: "I don't know if you want to withhold ruling on [the motion to compel] or if you want to order it and we can file [our] appeal."

We conclude that the comments of the defendant's counsel do not rise to the level of implicating the doctrine of induced error, as that doctrine has been applied. See *Healey* v. *Haymond Law Firm, P.C.*, 174 Conn. App. 230, 241, 166 A.3d 10 (2017) ("[t]he term induced error, or invited error, has been defined as [a]n error that a party cannot complain of on appeal because the party, through conduct, encouraged or prompted the trial court to make the erroneous ruling" [internal quotation marks omitted]). The cases cited by the plaintiff demonstrate the types of factual scenarios this court has

previously found to constitute encouraging or prompting the court to make an erroneous ruling. See id., 242 (defendant induced alleged instructional impropriety by affirmatively requesting language it sought to challenge on appeal); *Gorelick* v. *Montanaro*, 119 Conn. App. 785, 796–97, 990 A.2d 371 (2010) (party could not claim error on appeal that court should not have decided matter without live testimony where party had signed stipulation, orally requested court to decide cases on basis of trial transcripts, exhibits, briefs, and oral argument, and counsel assured trial court that parties wanted to proceed in that fashion); *Moran* v. *Media News Group, Inc.*, 100 Conn. App. 485, 502, 918 A.2d 921 (2007) ("[a] party may not attend an informal hearing, fail to object to an issue being addressed, voluntarily enter into an agreement and later claim that the commissioner should never have entertained the issue that led to an agreement"); *State* v. *Maskiell*, 100 Conn. App. 507, 517, 918 A.2d 293 (under unique circumstances of case, party's failure to object was conduct that implicated the doctrine of induced error, where defense counsel's silence in the face of representation by prosecutor that there was agreement as to admissibility of state's evidence prompted or encouraged court to rely upon report), cert. denied, 282 Conn. 922, 925 A.2d 1104 (2007).

[10] The plaintiff also argues that the defendant did not argue during the hearing that the QDRO was not drafted in conformance with the agreement. The court stated as much in its articulation. Because we disagree with the court's conclusion that the agreement was unambiguous, and we remand the matter for a new hearing during which the court is directed to hear extrinsic evidence and make factual findings as to the parties' intent regarding the provision at issue, we do not reach the issue of whether the QDRO conformed to the agreement. See *Hirschfeld* v. *Machinist*, 181 Conn. App. 309, 328, 186 A.3d 771 (court was required to resolve ambiguity by considering extrinsic evidence and making factual findings as to parties' intent), cert. denied, 329 Conn. 913, 186 A.3d 1170 (2018).

It is the plaintiff's position that the defendant's argument that the retirement asset provision is ambiguous should not be reviewed because it was not raised until her motion for articulation. We note that the trial court, in its articulation, answered that it had considered whether the provision was ambiguous, and, therefore, the circumstances do not amount to a trial by ambuscade of the trial judge. Cf. *Musolino* v. *Musolino*, 121 Conn. App. 469, 477, 997 A.2d 599 (2010). Moreover, as discussed further infra, the issue of whether the provision was ambiguous was necessarily subsumed within the plaintiff's motion to compel.

[11] The plaintiff contends that the proper standard of review is one of abuse of discretion and summarily provides in his brief the general standard of review applicable to factual decisions in family matters. See *Harlow* v. *Stickels*, 151 Conn. App. 204, 208, 94 A.3d 706 (2014) ("[a]n appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented" [internal quotation marks omitted]). Because the motion presented issues of law, including the construction of the separation agreement's retirement asset provision, we agree with the defendant that the applicable scope of review is plenary.

[12] As noted previously, the plaintiff's exhibit 4 identified three different approximate social security benefit amounts corresponding with the age of the defendant upon retirement.

[13] We express no opinion as to the feasibility or the validity of any of the three illustrated interpretations of the retirement asset provision.

[14] The plaintiff argues that the defendant has not claimed error in the denial of her motion to open the dissolution judgment. The defendant responds that she "indirectly challenges the motion to open ruling, by arguing that the court erred by granting the motion in limine and misapplying the parol evidence rule, which prevented the defendant from presenting the evidence necessary to support her motion to open." We agree with the defendant that her claim is adequately raised as a challenge to the denial of her motion to open the judgment.

[15] The plaintiff argues in the alternative that any error in granting the motion in limine was harmless. Because we reverse the decision of the trial court on the basis that it improperly concluded that the provision was unambiguous and we remand for a new hearing during which the court should consider all available extrinsic evidence, we need not address the claim of harmless error.

[16] Because the court erroneously concluded as a matter of law that the retirement asset provision was unambiguous, and thus did not make the

necessary factual determination of the intent of the parties in agreeing to the provision, the court could not reasonably have reached a conclusion as to whether the arguments raised by the defendant in her motion to open the judgment had merit.

———————————————