******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

## JENNIFER LABIENIEC *v.* ROBERT MEGNA
### (AC 45809)

Suarez, Clark and Vertefeuille, Js.

*Syllabus*

The defendant father appealed from the trial court's judgment denying his postjudgment motion for an order seeking a passport for the parties' minor child and granting the plaintiff mother's postjudgment motion to modify the custody of the child. *Held*:

The trial court did not abuse its discretion in denying the defendant's motion for an order seeking a passport for the child, as there was evidence to support the court's finding that it was not in the child's best interest to grant the motion.

The trial court erred in granting the plaintiff's postjudgment motion for modification of custody of the child, as that court improperly determined that the language of the parties' agreement was clear and unambiguous as to their intent with respect to the child's schooling, and the case was remanded for a determination of the parties' intent after consideration of relevant extrinsic evidence.

Argued May 13—officially released September 17, 2024

*Procedural History*

Application for custody of the parties' minor child, brought to the Superior Court in the judicial district of New Haven, where the court, *Goodrow, J.*, rendered judgment regarding custody in accordance with the agreement of the parties; thereafter, the court, *Laskos, J.*, granted the plaintiff's postjudgment motion to modify custody, from which the defendant appealed to this court; subsequently, the court, *Laskos, J.*, denied the defendant's motion for order regarding a passport for the parties' minor child, and the defendant filed an amended appeal to this court. *Reversed in part; further proceedings*.

*Campbell D. Barrett*, with whom were *Stacie L. Provencher* and, on the brief, *Kelly A. Scott*, for the appellant (defendant).

*Brette H. Fitton*, for the appellee (plaintiff).

*Opinion*

CLARK, J. In this custody dispute, the defendant, Robert Megna, appeals from the judgment of the trial court granting a postjudgment motion to modify custody of the parties' minor child, C, filed by the plaintiff, Jennifer Labieniec, and from the denial of his postjudgment motion for a passport for C. On appeal, the defendant claims that the trial court improperly (1) denied his motion for order regarding a passport for C, and (2) modified the agreement of the parties as to C's primary residence for school purposes. We disagree with the defendant as to his first claim but agree with him on his second claim. Accordingly, we affirm in part and reverse in part the judgment of the trial court.

We begin by setting forth the relevant facts, as found by the trial court, and procedural history of this case. The parties, who were never married, are the parents of C, a daughter born in September, 2016. The plaintiff also has a minor child, P, who is C's older half brother from another relationship. The defendant currently resides in New Haven, and the plaintiff currently resides in Middletown.

On July 31, 2019, the plaintiff filed a custody application, requesting, among other things, joint legal custody and primary physical custody of C. On August 23, 2019, the defendant filed a cross complaint, similarly seeking joint legal custody and primary physical custody of C.

On September 12, 2019, the court, *Goodrow, J.*, approved and incorporated into the judgment of the court an agreement of the parties concerning C (agreement), which provided in relevant part: "(1) The parties shall share joint legal custody of [C] . . . . (5) Both parties shall give thirty days advanced notice of any vacations of three days or more they take with or without [C]. There shall be no vacations with [C] out of the country without mutual agreement and consent. . . .

(10) [The defendant] shall have primary residence for school purposes. It is the intention of the parties that [C] will not be placed in the New Haven public school system."

When C was ready to start kindergarten in the 2021–2022 school year, the defendant attempted to enroll her in a private school in North Haven, but she was denied admission. Thereafter, the defendant proceeded to enroll C in the New Haven public school system for kindergarten.

On June 23, 2021, the plaintiff filed a motion for modification seeking to modify section 10 of the parties' agreement to award her primary residential custody of C for school purposes, and to enroll C in the Middletown public school system. Specifically, the plaintiff stated in her motion: "Since the date of the [agreement], the circumstances in this case have changed substantially, as follows:

"[The defendant] failed to enroll [C] in private school as contemplated in the agreement. [The defendant] unilaterally enrolled [C] in [the] New Haven public [school system] contrary to the agreement, and in violation of joint legal custody. Further, he is attempting to unilaterally impose a change to the parenting schedule by telling [the plaintiff] that [C] will stay with him throughout the week, despite the existing court orders. It is in the best interest of [C] to be enrolled in [the] Middletown public [school system], where [P and the plaintiff] live. . . .

"Further, throughout the pandemic [the] defendant failed to consult or coordinate with [the plaintiff] regarding his travel outside . . . of Connecticut and outside [of] the United States . . . resulting in [the plaintiff] having to choose risking exposure to Covid or having parenting time with [C] at various points throughout the pandemic."

The defendant filed an objection to the plaintiff's motion on December 20, 2021, in which he stated: "In her motion, the [plaintiff] states that the [defendant] failed to enroll [C] in a private school as contemplated by the agreement of the parties dated September 12, 2019. . . .

"The agreement executed by the parties . . . states in [section] 10 that "[t]he [defendant] shall have primary residence for school purposes. It is the intention of the parties that [C] will not be placed in the New Haven public school system. . . .

"In reality, the plaintiff unilaterally filed an application to enroll [C] in the Middletown school district on or around April 29, 2021, unbeknownst to the defendant. She only withdrew that application in August, 2021. . . .

"In addition, the plaintiff went with the defendant to enroll [C] in the New Haven [public school system] only after [C] was not accepted in a private school which was agreed upon by the parties. The plaintiff cooperated in the enrollment of [C] in the New Haven public [school system]. . . .

"The plaintiff now disingenuously seeks to paint the defendant as the culprit who has masterminded enrollment of [C] in the New Haven public school system distancing herself from a decision in which she partook. Any [substantial change in circumstances] has been caused by and agreed to by the plaintiff. . . .

"There is no basis for the plaintiff's modification of custody including diminution of time spent with the [defendant] by [C]. In fact, the defendant has helped the plaintiff by offering his services to watch [C]. He participates in [C's] activities and interests. He loves [C] and he is equally committed to providing for her welfare. It is in [C's] best interest for the parties to

continue to have joint legal, shared physical custody of [C].”

Separately, on November 2, 2021, the defendant filed a postjudgment motion for order seeking to have the court direct the parties to cooperate in obtaining a passport for C. The defendant further requested that he retain the passport in his custody. The plaintiff did not file any objection to the defendant's motion. On July 28 and August 8, 2022, the court, *Laskos, J.*, held a hearing on, inter alia, the plaintiff's motion for modification, the defendant's objection to the plaintiff's motion for modification, and the defendant's motion for order seeking a passport for C. The court heard testimony from both parties, a friend of the plaintiff, and the guardian ad litem, Attorney Joseph DiSilvestro.[1]

On August 26, 2022, the court issued a written order regarding the plaintiff's motion for modification. The court stated: “[The plaintiff] and [the defendant] are the parents of [C] . . . . [C] is a well-adjusted, happy child who loves both parents. She is social and has many friends. The parties entered into an agreement concerning [C]. . . . This agreement gave the [defendant] primary residency for school purposes under the assumption that [the defendant] would not place [C] in a specific public school system. Section 10 of the agreement . . . is clear as to purpose and intent. This section states: ‘[The defendant] shall have primary residence for school purposes. It is the intention of the

---

[1] We note that the guardian ad litem representing C on appeal is Attorney Richard W. Callahan. Attorney Callahan adopted the defendant's appellate brief as to the claim regarding the defendant's motion for order regarding a passport for C and requested that we reverse the judgment of the trial court as to that claim. As to the defendant's claim regarding the change in primary custody for school purposes, the guardian ad litem stated, “If there is reversible error as to [the defendant's claim regarding primary custody for school purposes], the guardian ad litem reserves the right on remand to formulate an opinion as to what is in the best interest of [C].”

parties that [C] will not be placed in the New Haven public school system.'

"[The defendant] once tried to enroll [C] in a school that would have satisfied the agreement, however [C's] admission was denied. Beyond this there was little to no effort by [the defendant] to enroll [C] during her second school year in a school consistent with the parties' agreement.

"Before [C] entered school, and for this school year, alternative school options that satisfy the agreement of the parties exist[ed], including a school near [the plaintiff's] home and another school in between the [parties'] residences. [The plaintiff] contacted [the defendant] to discuss these options, however, these options were rebuffed by [the defendant], and he enrolled [C] in the school closest to his home. [The plaintiff] did not consent to the enrollment of [C] in this school, however, having no other option, she determined it was in the best interest of [C] to proceed with the orientation process and file . . . this motion for modification. After a full year of [C] attending her current school, [the plaintiff] continues to disagree that the current school meets the intent of the agreement, and she believes that remaining in the current school is not in [C's] best interest.

"Upon the 2022–2023 school year, there was no effort by [the defendant] to apply to another school as intended in the agreement. [The plaintiff] obtained information to compare schools to determine what school is in [C's] best interest. [The defendant] did not review this information and unilaterally determined that the current school is in [C's] best interest.

"The current school and parenting schedule in place resulted in an inequity between the parents because [the plaintiff] had to adjust her work schedule so that

she could transport [C] to the school near [the defendant's] home. The commute to [C's] school, given [the plaintiff's] work schedule and additional expenses due to [an] increase in gas prices, created stressors that are not in [C's] best interest. [The defendant] did not have similar stressors. [The defendant] has more time and has resources for [C's] school transportation needs, in part because he is retired.

"[C] makes friends easily. She has expressed [a] willingness to remain in her current school and/or to attend another school. [C] has an admirable temperament. If [C] remains in the same school, there is no certainty that she would retain her current friends or teacher. The [guardian ad litem] supported [C] remaining in her current school or a change of school to a private school if that option is available.

"The court finds that the intent of the agreement was not followed and that this resulted in a lack of trust between the parties. This is not in [C's] best interest.

"The parties reached their agreement under the mistaken impression that [C] would be admitted to an alternative school. The court finds that this deviation from the agreement is a material change in circumstances that was not anticipated by either party when the agreement was made an order of the court.

"The court considers this evidence in light of the relevant law found at [General Statutes] § 46b-56 (c). When considering a modification of custody pursuant to § 46b-56 (c) the court must consider the best interests of the children utilizing the factors contained within that statute.

"The statutory factors most relevant to this decision include:

"1. The physical and emotional safety of the child; [C] is physically and emotionally safe in both parents' homes.

"2. The temperament and developmental needs of the child. [C] has an easygoing temperament.

"3. The child's adjustment to his or her home, school, and community environments. [C] easily transitions between the homes for parenting time. She makes friends easily and can easily transition to a new school.

"4. Any relevant and material information obtained from the child, including the informed preferences of the child. [C] is happy in her current school, however, [C] has also expressed wanting to attend the same school as [her] brother, [P], although [P] is older than [C].

"5. The willingness and ability of each parent to facilitate and encourage such continuing parent-child relationship between the child and the other parent as is appropriate, including compliance with any court order. Both parties had a clear understanding of the intent of the agreement as to school when it was ordered. [The plaintiff] followed this section of the court order even though [C] was enrolled in a school that did not meet the intent of the agreement. [The defendant] did not follow the intent of the agreement." The court ordered that the plaintiff have primary residence of C for school purposes, effective for the 2022–2023 school year. On September 14, 2022, the defendant filed this appeal challenging the court's August 26, 2022 decision on the plaintiff's motion for modification.

Subsequently, on November 28, 2022, the court denied the defendant's motion for order regarding obtaining a passport for C. The court stated: "[C] was five years old at the time of the hearing. The defendant enjoys traveling and he would travel internationally with [C], if allowed. The defendant failed to provide the plaintiff with advance notice of any vacations of three days or more taken with or without [C] as required by court order. This resulted in the plaintiff having to

choose risking exposure to Covid or having parenting time with [C] at various points throughout the pandemic. The court finds the plaintiff's concerns with international travel are reasonable given [C's] age and development and that it is not in [C's] best interest . . . for the court to grant an order for a passport at this time." Thereafter, the defendant filed an amended appeal to include the court's November 28, 2022 denial of his motion for order regarding obtaining a passport for C.

On May 12, 2023, the defendant filed a motion for articulation with respect to the court's order that C's primary residence be with the plaintiff for school purposes and its denial of the defendant's motion for order regarding a passport for C. On May 26, 2023, the trial court denied the motion for articulation. The defendant then filed a motion for review with this court on July 25, 2023. On September 13, 2023, this court granted review, but denied the relief requested therein. Additional facts and procedural history will be set forth as necessary.

I

The defendant first argues that the court erred in denying his motion for order regarding a passport for C. Specifically, the defendant argues that the court's finding that he did not comply with the agreement by notifying the plaintiff of his vacations is clearly erroneous and that the court abused its discretion in denying his motion because granting the motion is in C's best interest. We are not persuaded.

Section 46b-56 provides in relevant part: "(a) In any controversy before the Superior Court as to the custody or care of minor children . . . the court may make or modify any proper order regarding the custody, care, education, visitation and support of the children . . . . (b) In making or modifying any [such] order . . . the

rights and responsibilities of both parents shall be considered and the court shall enter orders accordingly that serve the best interests of the child and provide the child with the active and consistent involvement of both parents commensurate with their abilities and interests. . . .''

"An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Therefore, to conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did." (Internal quotation marks omitted.) *De Almeida-Kennedy* v. *Kennedy*, 224 Conn. App. 19, 29–30, 312 A.3d 150 (2024).

In its order denying the defendant's motion, the court found that it was not in C's best interest at that time for it to order the plaintiff to cooperate with the defendant in obtaining a passport for C. Specifically, the court stated that "[C] was five years old at the time of the hearing. The defendant enjoys traveling and he would travel internationally with [C], if allowed. The defendant failed to provide the plaintiff with advance notice of

any vacations of three days or more taken with or without [C] as required by court order. This resulted in the plaintiff having to choose risking exposure to Covid or having parenting time with [C] at various points throughout the pandemic. The court finds the plaintiff's concerns with international travel are reasonable given [C's] age and development and that it is not in [C's] best interest . . . for the court to grant an order for a passport at this time.''

The defendant argues that the record does not support the court's finding that he failed to provide the plaintiff with advance notice of any of his vacations and that his lack of notice caused the plaintiff to risk exposure to Covid in order to have parenting time with C. The defendant argues that, although these allegations were made in the plaintiff's motion for modification, there was no evidence presented at the hearing in support of these allegations and, therefore, the court's findings were clearly erroneous.

Although we agree with the defendant that there was little or no evidence regarding the defendant's alleged lack of notice regarding his travel, the defendant ignores the fact that there was evidence to support the court's additional findings in support of its order denying his motion, namely, that it was not in C's best interest for the court to grant the order for a passport in light of C's age and development.

At the hearing on the defendant's motion, the plaintiff testified regarding her concerns about C travelling internationally. In response to a question from her attorney on direct examination, she testified that her ''biggest concern [is with] C traveling [to] countries where she doesn't speak the language. God forbid anything were to happen. I know [the defendant] travels alone. She can't tell you where she lives, her phone number, or speak the language. That is my biggest concern.'' The

plaintiff then went on to testify about other concerns she had, including concerns about the company that the defendant keeps when he travels internationally.

At the time of the hearing, C was five years old. On the basis of the plaintiff's testimony about her concerns regarding C's age and development, it was reasonable for the court to conclude that it was not in C's best interest to require the plaintiff to assist the defendant in acquiring a passport for C at that time. Furthermore, it bears mentioning that the parties' agreement provides in relevant part that "[b]oth parties shall give . . . thirty . . . days advanced notice of any vacations of [three] days or more they take with or without [C]. There shall be no vacations with [C] out of the country without mutual agreement and consent." Thus, the agreement essentially gives each parent full veto power over the other parent's international travel with C. Because the plaintiff had not agreed or consented to allow C to travel internationally with the defendant (or expressed any intention of allowing C to do so in the future), had the court granted the motion for a passport, the court essentially would have been facilitating the defendant's international travel with C, even though under the agreement the plaintiff has full veto authority over such travel. Accordingly, we cannot conclude on this record that the court abused its discretion in denying the defendant's motion for an order regarding a passport.

II

The defendant next argues that the court improperly granted the plaintiff's motion for modification, which changed C's primary residence for school purposes from the defendant's address to the plaintiff's address. Specifically, the defendant argues that the court's (1) "conclusion that the [defendant] did not follow the intent of the agreement is contradicted by the plain

language of the agreement," (2) "reliance on [C's] preferences is logically inconsistent," and (3) findings regarding the plaintiff's concerns with C's placement in the New Haven public school system are "flawed." We agree with the defendant that the court improperly granted the plaintiff's motion for modification, but we do so for a somewhat different reason. Specifically, we conclude that the court improperly determined that the language of the agreement was clear and unambiguous with respect to the parties' intent concerning where C would attend school. Because the court's order granting the plaintiff's motion for modification was predicated on its determination that the relevant language of the agreement was clear and unambiguous with respect to where C would attend school, a remand is required so that the court can consider extrinsic evidence concerning the parties' intent with respect to that ambiguous provision of the agreement.

We begin by setting forth the principles of law relevant to our resolution of this claim. "[Section] 46b-56 provides trial courts with the statutory authority to modify an order of custody or visitation. When making that determination, however, a court must satisfy two requirements. First, modification of a custody award must be based upon either a material change [in] circumstances which alters the court's finding of the best interests of the child . . . or a finding that the custody order sought to be modified was not based upon the best interests of the child.[2] . . . Second, the court shall consider the best interests of the child and in doing so may consider several factors. General Statutes § 46b-56 (c). . . . Before a court may modify a custody order, it must find that there has been a material change in circumstances since the prior order of the court, but

---

[2] In her motion for modification, the plaintiff argued only that there had been a substantial change in circumstances, not that the original custody order was not based upon the best interests of the child.

the ultimate test is the best interests of the child. . . . These requirements are based on the interest in finality of judgments . . . and the family's need for stability. . . . The burden of proving a change to be in the best interest of the child rests on the party seeking the change. . . .

"Not all changes occurring in the time between the prior custody order and the motion for modification are material. . . . Although there are no bright-line rules for determining when a material change in circumstances warranting the modification of custody has occurred, there are several relevant considerations, including whether . . . the change was not known or reasonably anticipated when the order was entered, and the change affects the child's well-being in a meaningful way." (Citations omitted; emphasis omitted; footnote added; footnote omitted; internal quotation marks omitted.) *Clougherty* v. *Clougherty*, 162 Conn. App. 857, 868–70, 133 A.3d 886, cert. denied, 320 Conn. 932, 134 A.3d 621 (2016), and cert. denied, 320 Conn. 932, 136 A.3d 642 (2016).

In the present case, the court's determination that there was a material change in circumstances was predicated on its determination that section 10 of the agreement was clear and unambiguous as to the parties' intent with respect to C's schooling and that the circumstances presented were not anticipated by the parties' agreement. Specifically, the court found that "[s]ection 10 of the agreement . . . is clear as to purpose and intent" and that "[b]oth parties had a clear understanding of the intent of the agreement . . . ." The court interpreted the agreement to mean that the defendant would have "primary residency for school purposes under the assumption that [he] would not place [C] in [the New Haven public school system]." The court stated that the defendant "once tried to enroll [C] in a

school that would have satisfied the agreement, however [C's] admission was denied. Beyond this there was little to no effort by [the defendant] to enroll [C] during her second school year in a school consistent with the parties' agreement." The court concluded that "the intent of the agreement was not followed . . . [and] [t]he parties reached their agreement under the mistaken impression that [C] would be admitted to an alternative school. . . . [T]his deviation from the agreement is a material change in circumstances that was not anticipated by either party when the agreement was made an order of the court."

For the reasons that follow, we disagree with the trial court's conclusion that section 10 of the parties' agreement is clear and unambiguous. We begin with the relevant legal principles.

"It is well established that a separation agreement that has been incorporated into a dissolution decree and its resulting judgment must be regarded as a contract and construed in accordance with the general principles governing contracts. . . . When construing a contract, we seek to determine the intent of the parties from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . When only one interpretation of a contract is possible, the court need not look outside the four corners of the contract. . . . Extrinsic evidence is always admissible, however, to explain an ambiguity appearing in the instrument. . . .

"If a contract is unambiguous within its four corners, the determination of what the parties intended by their

contractual commitments is a question of law [and our review is plenary]. . . . When the language of a contract is ambiguous, [however] the determination of the parties' intent is a question of fact, and the trial court's interpretation is subject to reversal on appeal only if it is clearly erroneous. . . .

"Accordingly, [t]he threshold determination in the construction of a separation agreement . . . is whether, examining the relevant provision in light of the context of the situation, the provision at issue is clear and unambiguous, which is a question of law over which our review is plenary. . . . Contract language is unambiguous when it has a definite and precise meaning . . . concerning which there is no reasonable basis for a difference of opinion . . . . The proper inquiry focuses on whether the agreement on its face is reasonably susceptible of more than one interpretation. . . . It must be noted, however, that the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. . . . A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . ." (Citations omitted; internal quotation marks omitted.) *Fazio* v. *Fazio*, 162 Conn. App. 236, 243–45, 131 A.3d 1162, cert. denied, 320 Conn. 922, 132 A.3d 1095 (2016).

"In contrast, a contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . [A]ny ambiguity in a contract must emanate from the language used by the parties. . . . The contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so. . . . If the language of the contract is susceptible to more than one reasonable interpretation, the

contract is ambiguous." (Internal quotation marks omitted.) *Parisi* v. *Parisi*, 315 Conn. 370, 383–84, 107 A.3d 920 (2015).

As noted, section 10 of the parties' agreement provides in relevant part that "[the defendant] shall have primary residence for school purposes. It is the intention of the parties that [C] will not be placed in the New Haven public school system." The first sentence of section 10 of the agreement appears to have little meaning outside of the context of enrollment in a public school system. A child's residence is important for school purposes precisely because it dictates where a child is entitled to attend public school. See General Statutes § 10-184 ("[s]ubject to the provisions of this section and section 10-15c, each parent or other person having control of a child five years of age and over and under eighteen years of age shall cause such child to attend a public school regularly during the hours and terms the public school in the district in which *such child resides* is in session" (emphasis added)); General Statutes § 10-220 (a) ("[e]ach local or regional board of education . . . shall make such provisions as will enable each child of school age *residing in the district* to attend some public day school for the period required by law" (emphasis added)). Thus, the provision of the agreement stating that "[the defendant] shall have primary residence for school purposes" strongly suggests that the parties intended for C to attend public school in New Haven—the city in which the defendant resides.

The second sentence of section 10, however, goes on to state that "it is the intention of the parties that [C] will not be placed in the New Haven public school system." The ambiguity caused by these two sentences of section 10 of the agreement is manifest on its face. Indeed, the two sentences are entirely inconsistent. See *Thoma* v. *Oxford Performance Materials, Inc.*, 153 Conn. App. 50, 60, 100 A.3d 917 (2014) ("[i]rreconcilable

inconsistent provisions have been treated by this court and our Supreme Court as creating an ambiguity within the contract").

The parties' competing interpretations further elucidate this ambiguity. The defendant claims that, although the second sentence reflects the parties' wishes and desires that C attend a private school instead of the New Haven public schools, the second sentence was not obligatory or mandatory on the parties. He contends that, if C were unable to attend private school for whatever reason (such as not being admitted by the private school), C necessarily would have to attend public school and the agreement made clear that C would attend the public schools based on his residence—New Haven. He claims that his interpretation of the agreement is the only way to give effect to both sentences of the provision.

The plaintiff, on the other hand, contends that the plain language of section 10 demonstrated that the parties agreed that C would be enrolled in a private school, not in the New Haven public schools. The plaintiff argues that, because C did not get into the private school to which the defendant applied, and because the defendant did not apply to any other private schools on behalf of C, there was a material change in circumstances because neither party contemplated C not being admitted to a private school. She fails to address the meaning or purpose of the first sentence of section 10, however.

In concluding that the language of section 10 is clear and unambiguous and that it reflected the parties' intent that C not be placed in New Haven public schools under any circumstances and that, instead, the parties intended only that she be placed in a private school, the trial court focused exclusively on the second sentence of section 10, making little attempt to explain how the language stating that the defendant, who lives

in New Haven, would have primary residence for school purposes could be reconciled with the second provision of the agreement. Although the parties have advanced competing interpretations of the contractual language at issue, it is not the role of this court to determine which interpretation is more reasonable. The ambiguity in the contractual language gives rise to an issue of fact that must be resolved, in the first instance, by the trial court.

On the basis of the conflicting language of section 10 of the agreement, we conclude that the agreement is ambiguous as to C's schooling. In light of this ambiguity, the court should have considered extrinsic evidence with respect to the parties' intent under section 10 of the agreement. See *Parisi* v. *Parisi*, supra, 315 Conn. 385 (if language of contract is ambiguous, parties' intent is question of fact that trial court is required to consider and resolve after considering extrinsic evidence and surrounding circumstances). Because the court's determination that there was a material change in circumstances was predicated on its determination that section 10 of the agreement was clear and unambiguous as to the parties' intent with respect to C's schooling, we must remand the case to the trial court to determine the intent of the parties' after consideration of any relevant extrinsic evidence.[3] See *Casablanca* v. *Casablanca*, 190 Conn. App. 606, 620–21, 212 A.3d 1278 ("[o]n the basis of our conclusion that the court erroneously determined that the provision was unambiguous, we

---

[3] "We recognize . . . that none of the parties on remand has an obligation to present extrinsic evidence, whether testimonial or documentary, to resolve this ambiguity. Nor does any party have an obligation to present evidence as to who drafted the agreement, such that, in the event that extrinsic evidence did not resolve the ambiguity, the contra proferentem rule could properly be applied. We simply note that a [a party] who fails to present any evidence that would permit the fact finder to resolve a material ambiguity risks failing to satisfy [their] burden of proof." *Murchison* v. *Waterbury*, 218 Conn. App. 396, 415 n.19, 291 A.3d 1073 (2023).

conclude that a remand to the trial court is necessary for the court to hold a new hearing on the parties' motions and to determine the intent of the parties after consideration of all the available extrinsic evidence and the circumstances surrounding the entering of the agreement" (footnote omitted)), cert. denied, 333 Conn. 913, 215 A.3d 1210 (2019); *Hirschfeld* v. *Machinist*, 181 Conn. App. 309, 328, 186 A.3d 771 (court was required to resolve ambiguity by considering extrinsic evidence and making factual findings as to parties' intent), cert. denied, 329 Conn. 913, 186 A.3d 1170 (2018).

The judgment is reversed with respect to the granting of the plaintiff's postjudgment motion for modification and the case is remanded for further proceedings consistent with this opinion; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.